JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Jerry H. Burger appeals the decision of the trial court. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm the lower court.
 I. {¶ 2} According to the case, plaintiffs-appellees Karen Meck and Dominic Cuttaia filed their original complaint against AmeriCall, Inc. and Jerry H. Burger ("Burger"). The complaint was
 {¶ 3} based on AmeriCall's failure to pay on promissory notes issued to plaintiffs-appellees. Burger answered the complaint; however, AmeriCall did not. Consequently, appellees filed a motion for default judgment against AmeriCall. In addition, appellees filed a motion for summary judgment against Burger.
 {¶ 4} Burger filed a motion for leave to file a cross-motion for summary judgment instanter, together with an agreed motion for leave to file memorandum in opposition to plaintiffs' motion for summary judgment instanter. The trial court denied both crossmotions for summary judgment on December 11, 2003. On March 5, 2004, the court granted appellees' request for default judgment against AmeriCall.
 {¶ 5} On April 14, 2004, the matter proceeded to a bench trial. In addition to the letters, notes and other evidence presented, the parties also stipulated to eighteen items in joint exhibits No. 1 through No. 18.[1]
 {¶ 6} The trial court entered its order and opinion on May 21, 2004. The lower court found that the February 23, 2000 letter from Burger to the appellees served as a personal guarantee of the two promissory notes. The trial court found that Burger failed to perform under the terms of his personal guarantee. Judgment was granted for appellees and against appellant for the principal amount on the two promissory notes, approximately $69,000, plus accumulated interest.
 {¶ 7} According to the facts, appellees Meck and Cuttaia sued to enforce a personal guarantee of two promissory notes issued from defendant AmeriCall, Inc. Appellees hold two promissory notes; the first at a value of $45,000, with an interest rate of 13 percent per annum; the second note is in the amount of $24,000, with an interest rate of 12 percent per annum.
 {¶ 8} Burger founded AmeriCall in 1996 and held the position of CEO.[2] AmeriCall sought additional financing from RFC Capital Corporation ("RFC") in 2000.[3] However, RFC required that the individual investors subordinate their prior security interest to them. Appellees were reluctant to subordinate their security interest to RFC. In response to appellees' reluctance to subordinate the notes, Burger provided appellees with a letter. In his letter, he personally guaranteed that even if appellees subordinated their security interest to RFC, they would still receive the principal on the two notes. After signing the subordination agreement, Burger again guaranteed the notes in another letter.[4]
However, neither AmeriCall nor Burger ever paid the full principal due on either the 1996 or 1998 notes.
 {¶ 9} The case proceeded to a bench trial in which judgment was rendered in appellees' favor; this appeal now follows.
 II. {¶ 10} Appellant's first assignment of error states the following: "The trial court erred when it denied defendant Jerry Burger's motion for summary judgment." Appellant's second assignment of error states the following: "The trial court's conclusion that the February 23, 2000, letter constitutes a personal guarantee for payment of the 1996 and 1998 notes is contrary to law and against the manifest weight of the evidence."
 {¶ 11} Because of the substantial interrelation between appellant's first and second assignments of error, we shall address them together. This court reviews the lower court's granting of summary judgment de novo in accordance with the standards set forth in Civ.R. 56(C). North CoastCable v. Hanneman (1994), 98 Ohio App.3d 434, 440. In order for summary judgment to be properly rendered, it must be determined that:
"(1) no genuine issue of material fact remains to be litigated; (2) themoving party is entitled to judgment as a matter of law; and (3) itappears from such evidence that reasonable minds can come to but oneconclusion and, reviewing such evidence most strongly in favor of theparty against whom the motion for summary judgment is made, thatconclusion is adverse to the party."
 {¶ 12} Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. See, also, State ex rel. Zimmerman v. Tompkins (1996), 75 Ohio St.3d 447,448.
 {¶ 13} The standard of review for a manifest weight challenge is summarized in State v. Martin (1983), 20 Ohio App.3d 172, 175, as follows:
" * * * The court, reviewing the entire record, weighs the evidence andall reasonable inferences, considers the credibility of witnesses anddetermines whether in resolving conflicts in the evidence, the juryclearly lost its way and created such a manifest miscarriage of justicethat the conviction must be reversed and a new trial ordered. Thediscretionary power to grant a new trial should be exercised only in theexceptional case in which the evidence weighs heavily against theconviction."
(Citations omitted.)
 {¶ 14} Moreover, it is important to note that the weight of the evidence and the credibility of the witnesses are issues primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230. Hence, we must accord due deference to those determinations made by the trier of fact.
 {¶ 15} It is generally presumed that the intent of the parties to a contract resides in the language they choose to employ in the agreement.Shifrin v. Forest City Enterprises (1992), 64 Ohio St.3d 635. Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with special meaning, will extrinsic evidence be considered in an effort to give effect to the parties' intentions. Id. When the terms of a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language used by the parties. Id.
 {¶ 16} Burger argues that the trial court erred when it denied his motion for summary judgment; however, we find that there were genuine issues of material fact in dispute and do not find his argument to be well founded. The cross-motions for summary judgment were centered around the issue of whether or not Burger provided a personal guarantee on the promissory notes issued by AmeriCall.
 {¶ 17} In appellees' motion for summary judgment, they introduced the affidavit of appellee Meck stating that she made it known to Burger that she was not going to subordinate her security interest to RFC.[5]
Burger's motion for summary judgment addressed the same issue. More specifically, the motion argues that the letter from Burger did not constitute a personal guarantee. Accordingly, we do not find merit in Burger's argument regarding the trial court's disposition on his motion for summary judgment.
 {¶ 18} In addition, we are not persuaded by Burger's argument regarding the February 23, 2000 letter. The trial court correctly reviewed the evidence presented and concluded that the letter constituted a personal guarantee for payment of the 1996 and 1998 notes.
 {¶ 19} In the case at bar, the trial court found that the language in the contract was ambiguous and therefore allowed extrinsic evidence in an effort to give effect to the parties intentions. Specifically, the trial court stated the following in its decision:
"Defendant Burger testified as to his intentions when he stated `Ipersonally was to make arrangements to have people I knew at AmeriCall totake Karen out.' (Paraphrase Judge). This testimony, along with that ofthe plaintiff during trial eliminated any ambiguity in favor ofplaintiffs. The testimony further established that the intent of theletter was to serve as a personal guarantee by Jerry Burger to secure thesubordination of plaintiff's promissory notes to RFC CapitalCorporation.
 As such, defendant Jerry Burger has failed to perform under the termsof the personal guarantee. Judgment is herby [sic] rendered forplaintiff's [sic] and against defendant Jerry Burger for the principalamount of the two promissory notes, total being $69,000, plus accumulatedinterest at the rate specified on each note."
 {¶ 20} We find that the trial court acted properly when it determined the contract language to be ambiguous and allowed extrinsic evidence to provide further meaning. As previously mentioned, Karen Meck stated in her affidavit that she made her decision regarding the personal guarantee on the promissory notes well known to Burger. Appellee Meck stated that she did not want to subordinate her security interest to RFC. Appellee Meck stated:
"Defendant, Jerry Burger, gave me his personal guaranty, in writing, onFebruary 23, 2000. Based upon our receipt of Defendant Jerry Burger'spersonal guaranty, my husband and I signed documents to subordinate ourloans to RFC Capital Corp."[6]
 {¶ 21} (Emphasis added.)
 {¶ 22} In addition, Burger wrote the following in his February 23, 2000 letter: "I would like to take this opportunity to apologize for anymisunderstanding and or concern that Bernie Mandel[']s conversation mayhave caused you or Dominic. Bernie, as all attorneys are trained to do,automatically goes into a cover your ass mode when questioned in thesetype of deals. * * * I tell you now that this letter will serve as mypersonal guarantee to buy your note within 30 days of written notificationthat you would like to tender your note with AmeriCall and cash out."
 {¶ 23} In addition to the letters, notes and other evidence, joint trial exhibit No. 14 further demonstrates ambiguity and/or a dispute as to material facts in the case at bar. In this stipulated exhibit, a letter from appellant to appellee, Burger demonstrates ambiguity and conflict when he indicates he is enclosing "a personal money order to cover your (Karen Meck) interests, which I am paying out of my pocket while we battle."
 {¶ 24} The evidence above demonstrates ambiguity regarding the personal guarantee of Burger, thereby allowing the inclusion of extrinsic evidence on the part of the lower court. Based on the evidence presented in the record, the lower court properly found that the personal guarantee existed. Therefore, we find the court's decisions regarding Burger's motion for summary judgment and the February 23 letter to be proper.
 {¶ 25} Appellant's first and second assignments of error are overruled.
 III. {¶ 26} Appellant's third assignment of error states the following: "The interest rate on the judgment is contrary to law."
 {¶ 27} Appellant argues that the evidence does not support the existence of an award of interest of 13 percent on the 1996 note or 12 percent on the 1998 note. The lower court found that the guarantee was an agreement to pay the notes. The payment of the notes included terms of 13 percent interest on the 1996 note and 12 percent interest on the 1998 note.
 {¶ 28} R.C. 1343.02, rate upon judgments on instruments containing stipulation, provides the following:
"Upon all judgments, decrees, or orders, rendered on any bond, bill,note, or other instrument of writing containing stipulations for thepayment of interest in accordance with section 1343.01 of the RevisedCode, interest shall be computed until payment is made at the ratespecified in such instrument."
 {¶ 29} Additionally, 1343.03(A), interest when rate not stipulated, governs interest rates and states the following:
"(A) In cases other than those provided for in sections 1343.01 and1343.02 of the Revised Code, when money becomes due and payable upon anybond, bill, note, or other instrument of writing, upon any book account,upon any settlement between parties, upon all verbal contracts enteredinto, and upon all judgments, decrees, and orders of any judicialtribunal for the payment of money arising out of tortious conduct or acontract or other transaction, the creditor is entitled to interest atthe rate per annum determined pursuant to section 5703.47 of the RevisedCode, unless a written contract provides a different rate of interest inrelation to the money that becomes due and payable, in which case thecreditor is entitled to interest at the rate provided in that contract.Notification of the interest rate per annum shall be provided pursuant tosections 319.19, 1901.313 [1901.31.3], 1907.202 [1907.20.2], 2303.25, and5703.47 of the Revised Code."
 {¶ 30} Ohio courts have held that higher interest rates are allowed when they are provided for in the contract. Classic Funding v. Burgos,
Cuyahoga App. No. 80844, 2002-Ohio-6047; Ohio Sav. Bank v. Repco Elecs.,
Cuyahoga App. No. 73218, 1998-Ohio-3732. In order to be entitled to a rate different from the statutory rate of interest, two prerequisites must be satisfied: (1) there must be a written contract between the parties; and (2) the contract must provide a rate of interest with respect to money that becomes due and payable. P. W.F., Inc. v. C.S.U. Pizza,Inc. (1993), 91 Ohio App.3d 724, 729; see, also, Yager Materials,Inc. v. Marietta Indus. Ent., Inc. (1996), 116 Ohio App.3d 233,235-236; Hobart Bros. Co. v. Welding Supply Serv., Inc. (1985),21 Ohio App.3d 142, 144.
 {¶ 31} In the case at bar, there was a written contract between the parties specifying interest for the 1996 and 1998 notes at 13 percent and 12 percent respectively. In addition to the actual notes, there were various letters and documents exchanged between the parties used as evidence in the lower court's decision.
 {¶ 32} We do not find appellant's argument to be well founded. The record on appeal does not show the agreement to be unconscionable, nor does appellant provide any other identifiable defense to enforcement of the note or its terms. There is a written contract between the parties covering the terms of the notes, as well as substantial evidence provided in the record indicating the terms.
 {¶ 33} Appellant's third assignment of error is overruled.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., Concurs; McMonagle, J., Dissents (see separate dissenting opinion).
 DISSENTING OPINION
[1] 1. 10/23/96 Security Agreement — $45,000 — K.Meck D.Cuttaia
2. 10/24/96 Original promissory note from AmeriCall, Inc. for $24,000 to K.Meck D.Cuttaia (maturity date 11/1/00)
3. 11/28/98 Original promissory note from AmeriCall, Inc. for $24,000 to K.Meck (maturity date 11/28/01)
4. 11/28/98 Security agreement — $24,000 — K.Meck
5. 05/26/99 Financing statement (filed as dated) — K.Meck D.Cuttaia
6. 05/26/99 Financing statement (Ref. to F.S. #1360156) — K.Meck 
D.Cuttaia
7. 02/23/00 Burger letter to K.Meck
8. 02/24/00 AmeriCall/RFC Capital/Burger/Meck/Cuttaia — debt subordination agreement
9. 02/24/00 K.Meck/D. Cuttaia lost note affidavit (10/24/96 note)
10. 02/24/00 K.Meck lost note affidavit (11/28/98 note)
11. 02/XX/00 Burger letter to Meck re replacement notes and executed debt subordination agreement enclosed. 60 day buy-out offer enclosed
12. 03/XX/00 Replacement promissory note (for 10/24/96 note) — $45,000 — K.Meck D.Cuttaia
13. 03/XX/00 Replacement promissory note (for 11/28/00 note) — $24,000 — K.Meck
14. 02/01/02 Letter — Payment from J.Burger to K.Meck ($727.50) — interest only
15. 02/14/02 Letter — K.Meck to RFC Capital (cc: AmeriCall) — Notice of intent to pursue remedies under the debt subordination
16. 03/01/01 Memo from J.Burger to K.Meck, and copy of bank check — payment from J. Burger to K.Meck ($727.50) drawn on account of J.Burger (remittor)
17. 03/07/02 Memo from K.Meck and D.Cuttaia to J.Burger — Rejection of offer of repayment of principal only from J.Burger and request to Burger to submit note repayment plan to include repayment of principal and interest to on the notes
18. 08/01/03 Affidavit — K.Meck (attached to plaintiff's MSFJ).
[2] Tr. 99-100, 133.
[3] Tr. 138.
[4] See joint trial exhibit No. 11.
[5] See Karen Meck affidavit, ¶ 10.
[6] See affidavit, ¶ 10.