**P. & W.F., INC., Appellant,**

**v.**

**C.S.U. PIZZA, INC. et al., Appellees.**

[Cite as *P. & W.F., Inc. v. C.S.U. Pizza, Inc.* (1993), 91 Ohio App.3d 724.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 63834.

Decided Nov. 29, 1993.

*John T. Price,* for appellant.

*Carr, Feneli & Carbone Co., L.P.A.,* and *Leonard F. Carr,* for appellees 1910, Inc., Frank Wagner and Frances Wagner.

*Dworken & Bernstein Co., L.P.A.,* and *Howard S. Rabb,* for appellees C.S.U. Pizza, Inc., Harvey Sussel and Genevieve Lechner.

PATTON, Judge.

Plaintiff-appellant P. & W.F., Inc. ("plaintiff-lessor") appeals from the trial court's grant of defendants-appellees' motion for a directed verdict at the close of plaintiff-lessor's case during trial. The co-defendants, lessees and/or guarantors, confessed judgment for unpaid obligations in the sum of $5,132.36 plus interest at the rate of ten percent.

Plaintiff-lessor and record title holder of the subject property brought suit against co-defendants 1910, Inc., Frank Wagner and Frances Wagner (collectively "1910, Inc.") as original lessees and guarantors of the assigned subject lease and C.S.U. Pizza, Inc., Harvey Sussel and Genevieve Lechner (collectively "C.S.U. Pizza") as assignees for back rent and unpaid utilities.

The relevant facts are as follows: Plaintiff-lessor entered into a five-year lease agreement on or about February 23, 1987 whereby plaintiff-lessor agreed to lease the ground floor of 1910 Euclid Avenue to operate a bar and restaurant.

Approximately five months later, on or about September 23, 1987, 1910, Inc. assigned the lease to C.S.U. Pizza. In November 1989, just over two years after the lease assignment, a fire in the kitchen shut down the bar and restaurant and rendered it untenantable. At the time of the fire, C.S.U. Pizza was in arrears on the rent. After the fire, however, pursuant to the terms of the lease agreement, rent was abated for several months, which extended into 1990.

In January 1990, two months after the fire, plaintiff-lessor contracted with the Cleveland Repair Company, Stan Marszal, to repair the fire-damaged structure.

On or about March 9, 1990, Harvey Sussel of C.S.U. Pizza was asked to remove his personal property from the premises in order that repair work could begin. The record reflects that plaintiff-lessor told Sussel and Genevieve Lechner, both of C.S.U. Pizza, that the premises would be returned to "pre-fire condition."

During the months after the fire and through the repair work, disputes arose regarding insurance coverage. It was not until April 5, 1990 that a final agreement regarding coverage was reached between plaintiff-lessor's contractor and the insurance company. By the time the dispute had been resolved, little repair work had been done save for boarding up the windows to secure the building.

However, in May 1990 and again in July 1990, the premises fell victim to vandalism. First, the storage area was robbed of equipment. Second, vandals removed the copper plumbing. By this time, Sussel and Lechner began to look for buyers for their business, as it became obvious to them that they could no longer hope to operate their business.

After plaintiff-lessor learned of the vandalism, John Price, president of P. & W.F., Inc., refused to make the necessary repairs, as it was his belief that the repairs were the responsibility of Sussel pursuant to the terms of the lease agreement.

By the fall of 1990, Sussel had already contacted one Robert Cefrey to work on blueprints for Price in order to effectuate the repairs which still had not been completed. When it became apparent to Sussel that the repair work was not proceeding, Sussel told Cefrey to cease work on the blueprints.

By February 1991, Sussel realized that Price and P. & W.F., Inc. had no intention of repairing and restoring the subject premises to pre-fire condition. Therefore, pursuant to the provisions of Paragraph 10 of the lease, Sussel and Lechner gave written notification to terminate the lease, as the premises had been made, and indeed remained, unfit for occupancy. The notification of termination was sent to Price on February 26, 1991.

Paragraph 10, the subject of the dispute, reads as follows:

"10. UNTENANTABILITY: If the premises or the building are made unfit for occupancy by the elements or other cause, the Lessor may elect (a) to terminate this lease, as of the time when the premises or building are made unfit for occupancy, by notice to the Lessee within thirty days after that date, or (b) to repair, restore or rehabilitate the building or the premises at the Lessor's expense within ninety days after the Lessor is enabled to take possession of the damaged premises and undertake reconstruction or repairs, in which latter event the lease shall not terminate but rent shall be abated on a per diem basis while the premises are unfit for occupancy. *If the Lessor elects so to repair, restore or rehabilitate the building or the premises and does not substantially complete the work within the ninety day period, excluding from said period loss of time caused by delays beyond the control of the Lessor, either party can terminate this lease, as of the time when the premises or the building were made unfit for occupancy, by notice to the other party not later than ten days after the expiration of said ninety day period, as so computed.* In the event of termination of the lease pursuant to this Section 10, rent shall be apportioned on a per diem basis and be paid to the date of such termination." (Emphasis added.)

Plaintiff-lessor avers that C.S.U. Pizza breached the terms of the lease by wrongfully terminating its lease. It is the contention of C.S.U. Pizza, through Sussel and Lechner, that as plaintiff-lessor elected to repair and restore the subject premises and did not substantially complete the work within the ninety-day period, even excluding from said period the loss of time beyond plaintiff-lessor's control, it rightfully terminated the lease by written notification.

The trial court agreed with C.S.U. Pizza and granted its motion for a directed verdict at the close of plaintiff-lessor's case. C.S.U. Pizza confessed judgment in the sum of $5,132.36 plus interest for back rent which accrued before the fire. The trial court ordered interest at the rate of ten percent per annum. The lease set the interest rate at twelve percent per annum.

Plaintiff-lessor appeals the judgment of the trial court and assigns the following errors for our review:

"I. The trial court committed prejudicial error when in its amended memorandum of opinion and judgment entry nunc pro tunc it granted plaintiff a judgment which included only ten percent (10%) interest from November, 1989 on a principal amount which was confessed.

"II. The trial court committed prejudicial error in granting the defendants' motion to dismiss by finding that the defendant-tenant had properly terminated the subject lease in February, 1991.

"III. The trial court's granting of the defendants' motion to dismiss made upon the conclusion of the plaintiff's case was erroneous as a matter of law and

against the manifest weight of the evidence, and accordingly plaintiff suffered prejudicial error.

"IV.  The trial court committed prejudicial error by prematurely granting defendants' motion to dismiss without the defendants having sustained their burden of proof on the affirmative defense of termination of the lease.

"V.  The trial court committed prejudicial error by not making sufficient findings of fact and conclusions of law as required by Civil Rule 52."

## I

Plaintiff-lessor contends, in its first assignment of error, that the trial court erred in ordering interest on the confessed judgment in an amount less than that agreed upon in the terms of the subject lease.  Specifically, plaintiff-lessor avers that the court erroneously awarded interest at the rate of ten percent per annum when the contract stipulated an interest rate of twelve percent per annum.  We agree.

R.C. 1343.03 reads in relevant part:

"(A) * * * when money becomes due and payable upon any bond, bill, note, or other instrument of writing, * * * entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of * * * a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum, and no more, *unless a written contract provides a different rate of interest* in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract."  (Emphasis added.)

The subject lease states in pertinent part:

"All rent and other charges not paid when due shall bear interest at the rate of 12% per annum."

"For entitlement to a rate different than the statutory rate of interest to be charged, R.C. 1343.03(A) sets forth two prerequisites:  (1) there must be a written contract between the parties;  and (2) that contract must provide a rate of interest with respect to money that becomes due and payable.  For there to be a written contract, there must be a writing to which both parties have assented." *Hobart Bros. Co. v. Welding Supply Serv., Inc.* (1985), 21 Ohio App.3d 142, 144, 21 OBR 152, 154, 486 N.E.2d 1229, 1232.

In this case, both requirements have been met.  The subject lease, a written contract, was executed between the parties.  Second, the lease specifically provided for a twelve-percent rate of interest for all rent and other charges not paid when due.  Therefore, the applicable rate of interest is twelve percent.  The

trial court erred in awarding the statutory rate of interest as opposed to the rate contracted for in the subject lease.

Accordingly, the first assignment of error is well taken.

## II, III and IV

Plaintiff-lessor's second, third and fourth assignments of error aver the trial court erred in granting C.S.U. Pizza's motion for a directed verdict at the close of its case. Specifically, plaintiff-lessor contends that the verdict is against the manifest weight of the evidence and that the trial court applied an erroneous standard in reaching its decision.

▆ On appeal, this court must give deference to the findings of the trial court. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411–412, 461 N.E.2d 1273, 1276. The rationale for this general rule is that the trial judge is best able to view the witnesses and observe their demeanor and behavior and use these observations in weighing the credibility of the testimony. *Id.*

The standard of review therefore is as follows:

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

## A

▆ Plaintiff-lessor disputes the trial court's computation of time regarding the ninety-day period within which Price had in order to effectuate the necessary repairs to the subject premises. This fact has a bearing upon the propriety of Sussel's action of terminating the lease pursuant to Paragraph 10 for failure of plaintiff-lessor to repair the damaged property.

Plaintiff-lessor acknowledged the fact that repair work ceased because a dispute arose between Price and Sussel regarding responsibility to repair the damage caused by the acts of vandalism. Price denied responsibility upon the authority of lease addition No. 23:

"The Lessee shall, at Lessee's expense keep and maintain during the term hereof the interior (including, without limiting the scope of the foregoing, the electrical, lighting and *plumbing systems* in the leased premises) * * *." (Emphasis added.)

As the plumbing system was vandalized, Price contended the repair work was the responsibility of C.S.U. Pizza.

We find no reason to disturb the finding of the trial court that the damage caused by the vandals, including the theft of the copper plumbing, was indeed plaintiff-lessor's responsibility to repair and having failed to so complete, C.S.U. Pizza rightfully terminated its lease. Pursuant to Paragraph 10 of the lease, the acts of the vandals rendered the premises "unfit for occupancy by the elements or *other cause*" and, therefore, the duty to repair the damage caused by the vandals fell on Price as an "other cause." Price having failed to repair and complete the restoration of the premises to pre-fire condition, within ninety days exclusive of delays not caused by plaintiff-lessor, we agree with the trial court's conclusion and certainly find "some competent, credible evidence" to support the trial court's judgment.

## B

Plaintiff-lessor also argues the trial court erred in treating C.S.U. Pizza's motion made at the close of its case as one for a directed verdict when technically said motion should have been made pursuant to Civ.R. 41(B)(2), as the case was tried to the bench. Plaintiff-lessor contends that the trial court's application of the incorrect rule compelled the court to apply an erroneous standard in granting the motion.

Clearly, the trial court and counsel used the wrong terminology. The rule is that in an action tried to the bench, a motion for judgment at the conclusion of the plaintiff's case is one for dismissal pursuant to Civ.R. 41(B)(2) and *not* a directed verdict. Civ.R. 41(B)(2); *Bank One, Dayton, N.A. v. Doughman* (1988), 59 Ohio App.3d 60, 62, 571 N.E.2d 442, 443. Although the court treated C.S.U. Pizza's motion for a directed verdict when it should have applied Civ.R. 41(B)(2), we fail to see the harm when the former involves a more vigorous standard than the latter.

Civ.R. 41(B)(2) states in pertinent part:

"After the plaintiff, *in an action tried by the court without a jury*, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff * * *." (Emphasis added.)

Therefore, under Civ.R. 41(B)(2), the trial court is the trier of fact and may weigh the evidence to determine whether the plaintiff has made out its case by a preponderance of the evidence. *Bank One, supra; Jacobs v. Auglaize Cty. Bd. of Commrs.* (1971), 27 Ohio App.2d 63, 56 O.O.2d 245, 272 N.E.2d 635.

Where plaintiff has not met its burden by a preponderance of the evidence, dismissal under Civ.R. 41(B)(2) is proper.

On the other hand, a motion for a directed verdict made pursuant to Civ.R. 50(A), the motion granted by the court in this case, is governed by a more stringent standard:

"When a motion for a directed verdict has been properly made, and the trial court, *after construing the evidence most strongly in favor of the party against whom the motion is directed,* finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue." (Emphasis added.)

In ruling on a Civ.R. 50(A) motion for a directed verdict, the court is not the trier of the facts and does not weigh the evidence. *Bank One, supra,* 59 Ohio App.3d at 62, 571 N.E.2d at 444, fn. 4, citing *Jones v. Dolle* (Aug. 2, 1978), Hamilton App. No. C–77357, unreported, at 2–3. "Contrary to the granting of a directed verdict, which is based on insufficiency of evidence, a dismissal of plaintiff's case under Civ.R. 41(B)(2) allows the trial court to weigh the evidence, resolve any conflicts therein, and render judgment for the defendant if the plaintiff has shown no right to relief." *Bank One, supra,* at 63, 571 N.E.2d at 444. A dismissal made pursuant to Civ.R. 41(B)(2) will be set aside only if it is erroneous as a matter of law or against the manifest weight of the evidence. *Id.*

The evidence in this case revealed that Sussel and Lechner were not in possession of the subject premises shortly after the fire. They had transferred possession and the rent had been abated while the repair work was to commence. They were not responsible for making the repairs from the fire or the vandalism. Price did not comply with the lease provisions requiring him to make the necessary repairs to the premises from the fire damage, once he assented to it, exclusive of delays not caused by him, and further wrongfully refused to repair the damage done by the vandals within the allotted time frame. According to the language of the lease, Sussel and Lechner terminated the lease for Price's failure to repair and restore the subject premises. Under either standard, the trial court did not commit error.

Accordingly, the second, third and fourth assignments of error are overruled.

## V

Plaintiff-lessor, in the fifth assignment of error, argues the trial court erred in failing to make sufficient findings of fact and conclusions of law pursuant to Civ.R. 52 and 41(B)(2). Plaintiff-lessor contends that, on its face, the trial court's findings of fact and conclusions of law were insufficient, as it did not

properly address an issue which plaintiff-lessor thought was a critical one. This argument must fail.

The record demonstrates that the trial court did not err, as plaintiff-lessor did not comply with the mandates of Civ.R. 41(B)(2) and 52.

Civ.R. 41(B)(2) states in relevant part:

"If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52 *if requested to do so by any party.*" (Emphasis added.)

Civ.R. 52 states in relevant part:

"When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party *unless one of the parties in writing or orally in open court requests otherwise* before the entry of judgment pursuant to Civ.R. 58, or not later than seven days after the party filing the request has been given notice of the court's announcement of its decision, whichever is later, in which case, the court shall state in writing the conclusions of fact found separately from the conclusions of law." (Emphasis added.)

First, the trial court did not issue a "general" judgment. The court issued a memorandum of opinion which detailed the relevant facts and reasoning of the court.

Second, nevertheless, the trial court was not requested by plaintiff-lessor to issue such findings as provided in Civ.R. 52. Accordingly, the trial court did not commit error.

The fifth assignment of error is overruled.

Judgment affirmed in part and reversed and remanded in part for an increase in the rate to interest of twelve percent on the confessed judgment of $5,132.36 pursuant to the terms of the lease agreement.

*Judgment accordingly.*

JOHN F. CORRIGAN, P.J., and HARPER, J., concur.