DECISION AND JUDGMENT ENTRY
{¶ 1} This accelerated case is before the court on appeal from a judgment of the Sylvania Municipal Court and involves the violation of a nonsolicitation provision of an employment contract. The trial court made three central findings: (1) the relationship between appellant, K A Cleaning, Inc., d/b/a The Cleaning Genie, and appellee, Dinah Materni, was that of an independent contractor; (2) appellee violated a nonsolicitation provision of the contract, amassing $1,588 in actual damages; and (3) based upon a counterclaim, appellant wrongfully withheld compensation from appellee's wages for approximately five years to cover liability insurance, entitling appellee to $675. Upon consideration of the record, we affirm the decision of the trial court. We review the following assignments of error:
 {¶ 2} "The trial court erred in failing to award damages under the liquidated damages provision in paragraph 8(C)."
 {¶ 3} "The trial court erred in failing to award attorney's fees pursuant to the clear language of paragraph 8(C)."
 {¶ 4} "The trial court's award of $675 on Dinah Materni's claim is against the manifest weight of the evidence."
 {¶ 5} Appellee entered into an agreement with appellant on April 12, 1999, whereby appellee agreed to provide cleaning services as an independent contractor. Pursuant to Paragraph 8(A) of the agreement, appellee was prohibited from converting appellant's customers to appellee's own company or any other company at any time during the contract and for one year thereafter. Appellee was also required to notify appellant of any attempt by customers to solicit her to perform cleaning service directly. Furthermore, in the event of a breach of this agreement, Paragraph 8(C) contained a liquidated damages provision, explaining that "[i]f contractor breaks this agreement, contractor agrees that the Cleaning Genie will be entitled to damages equal to the total amount of the billing to the customer for one year * * * [and] that the contractor will also be liable for attorney's fees for the Cleaning Genie's lawsuit to enforce this agreement."
 {¶ 6} Appellee ended her contractual relationship with appellant in July 2004. Thereafter, within a year of terminating the relationship, appellee performed cleaning services for two former Cleaning Genie customers. Based upon this breach, appellant asked for enforcement of the liquidated damages clause and attorney's fees pursuant to Paragraph 8(C). However, the trial court awarded actual damages in the amount of $1,588 to appellant and no attorney's fees. The trial court also awarded appellee $675 on her counterclaim for wages wrongfully withheld over the five-year relationship. This amount was predicated on a $20 sum that was withheld from appellee's salary each month to contribute to a liability insurance policy.
 {¶ 7} In its first assignment of error, appellant argues that the trial court erred in failing to award it damages pursuant to the liquidated damages provision in Paragraph 8(C). Specifically, appellant contends that the parties entered into a valid contract that contained a plain and unambiguous clause for determining the amount of liquidated damages owed to appellant as the result of appellee's breach of contract. This figure is reached by calculating the amount that a customer would be charged for cleaning services had the services continued over the course of an entire year, based on the frequency and expense at which appellee performed her services. For example, in violation of the contract, appellee performed cleaning services for one customer three different times, in different weeks, charging $60 per visit. According to appellant's calculations, the services performed for this one customer calls for liquidated damages in the amount of $3,120, based on a $60 expense per week over the course of a 52-week year.
 {¶ 8} In Samson Sales, Inc. v. Honeywell, Inc. (1984),12 Ohio St.3d 27, the Ohio Supreme Court set forth the standard that must be met in order to determine whether a liquidated damages clause is valid or whether it should be considered to be a penalty. The Samson court held that such a clause would not be considered a penalty "`if the damages would be (1) uncertain as to amount and difficult of proof, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof.'" Id. at 29, quoting Jones v.Stevens (1925)112 Ohio St. 43, paragraph two of the syllabus. Whether a particular sum specified in a contract is intended as a penalty or as liquidated damages depends upon the operative facts and circumstances of a particular case. Id. at 28-29. Furthermore, if a stipulated damages provision is challenged, a court must view the provision "in light of what the parties knew at the time the contract was formed and in light of an estimate of the actual damages caused by the breach." Kindle Road Co.,L.L.C. v. Trickle, 5th Dist. No. 03CA99, 2004-Ohio-4668, at ¶ 21. When a provision was reasonable at the time that it was formulated and bears a reasonable, but not necessarily exact, relationship to the actual damages, the provision is enforceable. Id. (Citation omitted.).
 {¶ 9} Appellant asserts Samson is controlling and mandates a finding that the liquidated damages clause is enforceable. While we agree that the Samson case is controlling, we must conclude that, given the facts of this case, the liquidated damages provision is unenforceable. As to the first prong of theSamson test, we conclude that the damages caused by appellee's breach of the contract are readily ascertainable. In fact, the record clearly shows that between the two customers that appellee served in violation of the contract, appellee was compensated $180 and $1,408, constituting the actual damages, $1,588, collected from services performed in violation of the contract. Moreover, the amount of damages, $7,696, that appellant would receive under the provision was not reasonable at the time of the formation of the contract and does not bear a reasonable relation to the actual damages. Because the purported liquidated damages clause fails to satisfy the first prong of Samson, we need not reach the other two prongs and find that damages provision unenforceable. Accordingly, appellant's first assignment of error is found not well-taken.
 {¶ 10} In its second assignment of error, appellant claims that the trial court erred in failing to award attorney's fees pursuant to Paragraph 8(C). Appellant submits that the attorney's fees in litigation were $8,839.50 from July 27, 2004 through June 30, 2005, and that appellant is entitled to that amount due to appellee's failure to respond to discovery and her filing of a motion for a protective order to compel discovery. However, the contractual provision within Paragraph 8(C), which makes it appellee's responsibility to pay appellant's attorney's fees is unenforceable. "Contractual attorney fee provisions are unenforceable * * * in the following situations: (1) when the parties do not share an equal bargaining position; (2) when the terms of the provision are not freely negotiable; (3) when the attorney fee provision promotes litigation or illegal acts; or (4) when the attorney fee provision acts as a penalty." MotoristInsurance Co. v. Shields, 4th Dist. No. 2387, 2001-Ohio-2387. For the purpose of this disjunctive test, it is only necessary to satisfy one element to establish the attorney's fee provision as unenforceable.
 {¶ 11} We recognize valid arguments for both sides regarding the elements dealing with bargaining power and freedom to negotiate. However, the attorney's fee provision is clearly unenforceable, because it operates as a penalty against appellee and encourages litigation. Specifically, because the attorney's fee provision only requires appellee to pay appellant's attorney's fees in case of breach while requiring nothing from appellant in the event of its breach of the contract, the provision obviously works as a penalty, and its one-sided, appellant-favored nature promotes litigation. Accordingly, we find appellant's second assignment of error not well-taken.
 {¶ 12} In its third assignment of error, appellant asserts that the trial court's award of $675 to appellee on her counterclaim is against the manifest weight of the evidence. Appellee prevailed on her claim, which alleged that during her employment appellant wrongfully withheld $20 of her earnings each month to contribute to a liability insurance plan. In assessing the amount due to appellee, the trial court relied on a 2001-2002 invoice from the insurance company showing the total cost of insurance for the corporation was $1,640. This amount was divided by the number of employees that year (15), establishing that the cost of the liability insurance per employee every year was $109. Because appellee was charged $240 annually, the trial court determined that $131 was wrongfully and excessively withheld each year for the duration of the five-year relationship, totaling $675.
 {¶ 13} Appellant stresses that it was error for the court to award damages in the amount calculated, because the invoice from the insurance company only lists the insurance premium for the 2001-2002 year. Therefore, an accurate calculation of damages over the five-year relationship could not be determined absent the premium figures from 1999, 2000, 2003, and 2004, which were not in the record. Consequently, appellant claims that because only the amount of money withheld during the 2001-2002 year was proven, awarding $675 to appellee is against the manifest weight of the evidence. Thus, appellant argues that only $131, the amount actually proved to have been wrongfully withheld during the 2001-2002 year, may be awarded to appellee.
 {¶ 14} However, the record indicates that the corporation's owner, Karen Sue Thompson, indicated that the annual liability insurance premium was $1,640 and that the average number of employees was 15. Therefore, the trial court's figures used in calculating damages was not based merely on one invoice that may be an inaccurate representation of insurance premiums over the five-year period. "It is well settled in Ohio that judgments supported by some competent, credible evidence going to all essential elements of the offense will not be reversed by a reviewing court as against the manifest weight of the evidence."C.E. Morris v. Foley Construction Co. (1978),54 Ohio St.2d 279, syllabus. Certainly, a statement from Thompson constitutes competent, credible evidence in matters regarding company insurance policies and the number of people employed. Therefore, the trial court reasonably relied on this information to calculate figures used in its decision. Accordingly, the trial court's award of $675 to appellee was not against the manifest weight of the evidence, and we find appellant's third assignment of error not well-taken.
 {¶ 15} On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Sylvania Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Pietrykowski, J., Singer, P.J., Concur.