OPINION
{¶ 1} Defendant-appellant, Steven Piper, dba Piper Trucking (hereinafter "Piper"), appeals the judgment of the Mercer County Court of Common Pleas granting plaintiff-appellee, Heffner Investments, Ltd. (hereinafter "Heffner Investments") motion for summary judgment on Heffner Investments claims *Page 3 
against Piper and Piper's claims against Heffner Investments. Piper also appeals the trial court's grant of the City of Celina's (hereinafter "Celina") motion for summary judgment/motion to dismiss Piper as a party. For the following reasons, we affirm in part, reverse in part and remand to the trial court.
 {¶ 2} The present cases involve the property located at 704 North Main Street, Celina, Ohio (hereinafter "the property"), which was owned by Ralph Heffner's estate. In August 2002, Ron Piper, Steven Piper's father, talked to William Heffner, Ralph Heffner's son, about the property in question. On or about August 28, 2002, William Heffner, as executor of the estate of Ralph Heffner, entered into a lease of the property with Piper. The terms of the lease agreement provided that the lease was to commence on September 1, 2002 and expire on August 31, 2003, and rent was $500.00/month. (Heffner Investment's Lease Agreement with Piper). The lease also contained an indemnification clause. (Id.)
 {¶ 3} Piper took possession of the property on September 1, 2002, and remained in continuous possession of the premises until May 22, 2006. Piper has not paid rent on the property since August 2003.[1] *Page 4 
 {¶ 4} The City of Celina expressed interest in the property at issue, and subsequently passed Ordinance No. 32-03-O, which authorized the Safety Service Director to enter into an eighteen-month lease with Heffner Investments. (Celina Ordinance No. 32-03-O, passed July 1, 2003.) In July 2003, Heffner Investments entered into a written lease agreement with Celina, which was to commence on September 1, 2003, and end on February 28, 2005. (Heffner Investment's Lease Agreement with Celina). According to the terms of that lease, the rent for the premises was $27,000, payable in eighteen installments of $1,500/month. (Id.). That lease also contained an option to purchase the property "during the final month of the initial term of [the] Lease at a purchase price equal to One Hundred Eighty Thousand Dollars ($180,000)." (Id.). Although Celina was supposed to commence its lease of the property on September 1, 2003, Piper continued to remain on the property.
 {¶ 5} On September 9, 2003, Heffner Investments filed a forcible entry and detainer action against Piper in the Celina Municipal Court (Case No. 03CVG00785). Piper filed a counterclaim alleging breach of an oral contract for sale of the property. The case was subsequently transferred to the Mercer County Common Pleas Court and was assigned Case No. 04-CIV-036. *Page 5 
 {¶ 6} Thereafter, Heffner Investments filed a motion to interplead Celina in Mercer County Case No. 04-CIV-036. On August 30, 2004, Celina filed a motion to stay the proceedings, which was granted by the trial court.
 {¶ 7} On July 18, 2005, Celina filed appropriation proceedings against Heffner Investments, and also against Piper, as an individual potentially claiming some interest in the subject property in Mercer County Court of Common Pleas Case No. 05-CIV-111. In that case, Heffner Investments filed a cross-claim against Piper for breach of the lease agreement and indemnity. In addition, Piper filed a counterclaim against Heffner Investments alleging "breach of contract", "fraud", "sham procedures", and "frivolous conduct" under Civ. R. 11. Celina subsequently filed a motion to dismiss Piper from the appropriation proceedings. Piper also filed a counterclaim against Celina for declaratory judgment.
 {¶ 8} A third case involving this property was filed in the Mercer County Court of Common Pleas, Mercer County Case No. 05-CIV-076, alleging violations of R.C. 121.22, also known as the "Sunshine Law".[2]
 {¶ 9} On November 4, 2005, Heffner Investments filed its motion for summary judgment against Piper on the claims asserted in its cross-claim against *Page 6 
Piper and upon the claims asserted by Piper in his counterclaim against Heffner. The trial court held a hearing on the motion for summary judgment on April 24, 2006. On April 26, 2006, the trial court filed its judgment entry in which it ordered, adjudged, and decreed the following:
 1. that the motion for summary judgment (motion to dismiss) filed by the City of Celina is hereby sustained, and the defendants, Steven E. Piper and Steven E. Piper dba Piper Trucking are hereby dismissed as defendants in the appropriation portion of Case No. 05-CIV-111;
 2. that the motion for summary judgment of Heffner Investments, Ltd., for summary judgment is hereby sustained, and Heffner Investments, Ltd is granted judgment against the defendant Steven Piper on its breach of contract and indemnity claims, and the matter is continued for a determination of damages;
 3. that the motion for summary judgment of Heffner Investments, Ltd. is hereby sustained, and Heffner Investments, Ltd. is granted judgment on all of the counterclaims asserted against it by Steven Piper, and the Counterclaim is hereby dismissed;
 4. that the motion for partial summary judgment of Steven W. Piper, in Case No. 05-CIV-076 is hereby overruled.[3]
(JE 4/26/06).
 {¶ 10} Piper has filed various prior appeals with this court which we have dismissed for want of jurisdiction. Thereafter, an agreed judgment entry was filed on June 5, 2007, which provided: *Page 7 
 A. Judgment is granted in favor of HIL and against Piper upon HIL's breach of contract claim in the amount of Sixty Six Thousand Dollars ($66,000) as set forth in the Memorandum Opinion and Judgment Entry filed on April 26, 2006, in the 111 Case and May 1, 2006, in the 036 Case.
 B. Judgment is granted in favor of HIL and against Piper on HIL's indemnity claim in the stipulated amount of Fourteen Thousand Dollars ($14,000), as and for HIL's attorney's fees.
 C. Judgment is granted in favor of HIL and against Piper for pre-judgment interest upon the amounts awarded above in the amount of $26,727.52 through April 30, 2007.
 D. Judgment is granted in favor of HIL and against Piper upon the counterclaims and crossclaims asserted by Piper in the 036 and 111 Cases and the same are dismissed.
 E. Judgment is granted in favor of Celina and against Piper in the 111 Case and Piper and Steven E. Piper dba Piper Trucking are dismissed from said action.
 F. Judgment is granted in favor of HIL and against Piper for post judgment interest at the rate of 2% per month and all costs of this action.
 {¶ 11} Piper filed an appeal asserting five assignments of error for our review. Oral arguments were subsequently held in this case. Thereafter, Piper filed a motion entitled "motion to consolidate and to declare appeals moot" with this court. We found that Piper failed to "set forth good cause for consolidating App. Nos. 10-07-09 and 10-07-10, which have been heard at oral arguments, with *Page 8 
10-07-21, which is assigned for future argument."[4] (J.E. 2/15/08). In addition, we denied Piper's request to declare moot. (Id.). Accordingly, we overruled Piper's motion. (Id.).
 {¶ 12} For clarity of analysis, we will address assignments of error out of the order presented in the appellant's brief and will combine assignments of error where appropriate.
 ASSIGNMENT OF ERROR NO. I The trial court erred in granting summary judgment to Heffner Investments, Ltd. (HIL) against Steven Piper on HIL's breach of contract claim.
 ASSIGNMENT OF ERROR NO. III The trial court erred in granting HIL's motion for summary judgment against Steve Piper and Piper's counterclaims against HIL and dismissing Piper's Counterclaim.
 {¶ 13} In his first and third assignments of error, Piper argues that the trial court erred in granting summary judgment to Heffner Investments on its breach of contract claims against Piper, and in granting summary judgment to Heffner Investments on Piper's counterclaims against it. Specifically, Piper argues that Heffner Investments is not entitled to a writ of restitution because William Heffner orally agreed to sell Piper the property on August 26, 2002, when the estate was able to put the property up for sale. Piper argues that Heffner Investments cannot *Page 9 
enforce the Statute of Frauds because of: (1.) partial performance, (2.) promissory estoppel, and (3.) fraud.
 {¶ 14} By contrast, Heffner Investments argues: the contract relates to an interest in land and the Statute of Frauds applies; there was no writing in which Heffner Investments offered to sell the property to Piper; and Piper's claims that promissory estoppel, part performance, and fraud preclude a Statute of Frauds' defense lacks merit.
 {¶ 15} The trial court's grant of summary judgment is reviewed under a de novo standard. Doe v. Shaffer (2000), 90 Ohio St.3d 388, 390,2000-Ohio-186, 738 N.E.2d 1243, citing Grafton v. Ohio Edison Co.
(1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Summary judgment is appropriate where: (1.) there is no genuine issue of material fact; (2.) the moving party is entitled to judgment as a matter of law; and (3.) reasonable minds could come to but one conclusion when viewing the evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party. Civ. R. 56(C); Grafton, 77 Ohio St.3d at 105, citing State ex. rel. Cassels v. Dayton City School Dist. Bd. ofEdn. (1994), 69 Ohio St.3d 217, 219, 631 N.E.2d 150. "`As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" Turner v. Turner (1993), 67 Ohio St.3d 337, 340, *Page 10 617 N.E.2d 1123, quoting Anderson v. Liberty Lobby, Inc. (1986),477 U.S. 242, 106 S.Ct. 2505.
 Statute of Frauds and Promissory Estoppel {¶ 16} Piper argues that Heffner orally promised to sell him the property, but that the Statute of Frauds does not apply because of the doctrine of promissory estoppel. According to Piper: 1.) Heffner told him that the lease was the only document he would need in order to be the purchaser of the property as long as he was still renting the property when it became available out of the estate; and 2.) Heffner told Piper that he would provide Piper with the necessary documents in order to close the sale of the property.
 {¶ 17} The Statute of Frauds, R.C. 1335.04, provides:
 No lease, estate, or interest, either of freehold or term of years, or any uncertain interest of, in, or out of lands, tenement, or hereditaments, shall be assigned or granted except by deed, or note in writing, signed by the party assigning or granting it, or his agent thereunto lawfully authorized, by writing, or by act and operation of law.
Emphasis added. In addition, no action shall be brought on the sale of land "unless the agreement upon which such action is brought, or some memorandum or note therof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized." R.C. 1335.05.
 {¶ 18} In the present case, there was a written lease agreement for the property signed by both Steven Piper and William Heffner. (Lease Agreement *Page 11 
attached to complaint filed on 3/3/04). The written lease agreement did not contain a written option to purchase the property, and there were no written agreements to sell the property. (Id.). Since no writing exists for the sale of the property, we must determine whether the Statute of Frauds applies in the present case or whether an exception precludes the application of the Statute of Frauds.
 {¶ 19} In McCarthy, the court stated
 In Ohio, the doctrine of promissory estoppel has been adopted as it is stated in the Restatement of the Law 2d, Contracts (1973), Section 90, which provides:
 "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." McCroskey v. State (1983), 8 Ohio St.3d 29, 8 OBR 339, 456 N.E.2d 1204; Talley v. Teamsters Local No. 377 (1976), 48 Ohio St.2d 142, 2 O.O.3d 297, 357 N.E.2d 44.
McCarthy, Lebit, Crystal Haiman Co., L.P.A. v. First Union Mgt.,Inc. (1993), 87 Ohio App.3d 613, 624, 622 N.E.2d 1093. The court, inMcCarthy, then held that "the doctrine of promissory estoppel may be used to preclude a defense of statute of frauds, but only when there has been (1) a misrepresentation that the statute's requirements have been complied with or (2) a promise to make a memorandum of the agreement." Id. at 627.
 {¶ 20} The Eleventh District disagreed with the two additional requirements applied by the Eighth District in McCarthy to cases involving the promissory *Page 12 
estoppel exception to the Statute of Frauds. Connolly v. Malkamaki, et.al., 11th Dist. No. 2001-L-124, 2002-Ohio-6933, ¶ 23-24. However, this court need not determine whether the additional requirements listed inMcCarthy apply, because we find that the doctrine of promissory estoppel does not apply in this case.
 {¶ 21} In his deposition, Piper stated that Heffner "definitely wanted to sell [the property] for $180,000. He also made it very clear that as far as me doing the work and cleaning the property up and as long as I was the current tenant, that he would not sell it out from under me and that I had the first option to buy." (Piper Depo. at 39).
 {¶ 22} William Heffner, in his deposition, stated that Ron Piper, Steven Piper's father, had stated that they would like an option to purchase but that Heffner told him "I can't give that to you." (Heffner Depo. at 30).
 {¶ 23} After reviewing the record, we find that Heffner Investments did not make a promise which Piper could reasonably rely upon. At most, Piper's deposition indicates that he was promised the right to first refusal, and not an option to purchase the property. Therefore, we find that there are no facts in the record demonstrating promissory estoppel.
 Statute of Frauds and Partial Performance {¶ 24} Piper also alleges that the Statute of Frauds is unenforceable because of partial performance. Specifically, Piper alleges that he had substantial partial *Page 13 
performance in reliance upon Heffner Investments agreement in that he "spent considerable effort, time, and money preparing his new business home for occupancy" and that "[n]obody buys a thousand dollar furnace for an office and pays to have the duct installed, when he believes he's a one-year tenant . . . let-a-lone-a 90 day tenant."
 {¶ 25} In regards to partial performance, the Ohio Supreme Court has held:
 Part performance to be sufficient to remove an agreement from the operation of the statute of conveyances (Section 5301.01, Revised Code), must consist of unequivocal acts by the party relying upon the agreement, which are exclusively referable to the agreement and which have changed his position to his detriment and make it impossible or impractical to place the parties in status quo.
Delfino v. Paul Davies Chevrolet, Inc. (1965), 2 Ohio St.2d 282,209 N.E.2d 194, paragraph four of the syllabus, emphasis added. The court further stated, "[i]f the performance can reasonably be accounted for in any other manner or if plaintiff has not altered his position in reliance on the agreement, the case remains within the operation of the statute [of frauds]." Id. at 287.
 {¶ 26} Piper spent money and effort in preparing the property for his business. Piper stated in his deposition that he had a thousand dollars in a furnace for the property, and six or seven thousand dollars in garage doors. (Piper Depo. at 56). During his deposition, Piper discussed the repairs he made to the property stating: *Page 14 
 Q, Were those things that you needed to do in order to operate your business from that facility?
 A, Well, I would say, yah, you would probably need gas and electric and everything — I wouldn't say that they were necessary for the business. I mean, they were necessary for the building to be up to code and operational. I mean, they were necessary for the building to be up to code and operational. I mean, it was in shambles.
 Q. So in order for you to operate your trucking business in that facility, those things had to be done; is that correct? A. * * * So as far as any of these repairs needed to be done as far as so you could use the facility, which we never would have spent a dime on it if we didn't think that we were buying it. That's why we, that's why we did it. We thought it was ours. I would say a lot of them were repairs that should been made that just never were. It just needed, it was just ran down."
(Id. at 57-58).
 {¶ 27} In regards to the clean-up of the property, Piper stated the following in his deposition:
 Q. Isn't it a fact that Mr. Heffner told you to bill him for the cost of the clean-up?
 A. Mr. Heffner agreed to pay for the dumpster expense, as far as the landfill part of it; but as far as the time, effort, and everything else, it was strictly on us.
 Q. The labor for what?
 A. Well, for cleaning it up, load it up, dragging everything out. Basically, the only thing that Bill or Heffner Investments paid for was the landfill bill.
 * * *
 Q. Well, you, in fact, invoiced Heffner Investments for the labor too, didn't you?
 A. Yeah. That was, there was a couple, there was a couple hours for labor on there for the extensive trimming that needed to be done due to the weeds being 4 and 5-foot high out there; but it wasn't actually my labor, it was labor that Bill had agreed to pay for some of the guys that were helping out there. *Page 15 
 Q. Did you ever submit any invoices to Mr. Heffner for cleanup or anything else that were not paid by Heffner Investments?
 A. No.
(Piper Depo. at 106-7). According to Piper, the fair rental value of the property as it stands now is approximately $1,000. (Id. at 109).
 {¶ 28} The actions taken by Piper, including repairing and cleaning up the property, were consistent with the written lease agreement, and do not constitute partial performance toward the purchase of the property. Although Piper spent time and money making changes to the property, he was reimbursed by Heffner Investments for the clean-up costs he incurred. Additionally, the changes he made were needed in order to use the property for his business, and thus, were consistent with leasing the property. Moreover, Piper was only paying $500/month rent for a property that he says should rent for approximately $1,000/month as the property stands in its current condition. Consequently, we find that the doctrine of partial performance does not preclude the application of the Statute of Frauds in this case.
 Fraud, the Statute of Frauds, and Fraud Claims {¶ 29} Piper also argues that Heffner Investments could not enforce the Statute of Frauds because Heffner committed fraud. Essentially, Piper argues: Heffner offered to sell the property but in his deposition stated that the property was not for sale; Heffner told Piper that the lease would be renewed or extended until the property had cleared the estate and the sale completed; Heffner wrote a *Page 16 
letter to Celina saying that the lease with Piper renews but did not say that he would then offer Piper a renewal; and Heffner said he would provide the necessary paperwork for Piper to be the owner. Further, Piper argues that he relied on the agreement to purchase and the agreement to renew until the sale of the property could be completed, he acted like an owner of the property, and he was damaged by his reliance.
 {¶ 30} We have been unable to find any case law wherein fraud precluded the application of the Statute of Frauds, and Piper has not cited this court to any such cases. However, assuming arguendo, that fraud could preclude the application of the Statute of Frauds, we would still find it inapplicable in this case because no genuine issues of material fact exist on the required elements of fraud.
 {¶ 31} In order to establish fraud, the following elements are required:
 "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance."
Bidlak v. Hubert, 3d Dist. No. 11-07-06, 2008-Ohio-83, ¶ 16, quotingCohen v. Lamko Inc. (1984), 10 Ohio St.3d 167, 169, 462 N.E.2d 407. The circumstances surrounding fraud must be pled with particularity and must include: "the time, place, and content of the false representation, the fact of misrepresentation, and the *Page 17 
nature of what was obtained or given as a consequence." Id., citingF J Roofing v. McGinley (1987), 35 Ohio App.3d 16, 17,518 N.E.2d 1218.
 {¶ 32} There is no indication that any representation made by Heffner was made falsely with knowledge of the statements falsity, or with reckless disregard as to whether the statement was true or false, a necessary element for a fraud claim. Bidlak, 2008-Ohio-83 at ¶ 16, quoting Cohen, 10 Ohio St.3d at 169. There is no indication that Heffner knew that he did in fact have authority to sell the property when he allegedly claimed he could not sell the property. In addition, Piper stated, in his deposition, that he did not know any facts that supported a fraud claim. (Piper Depo. at 106).
 {¶ 33} For the aforementioned reasons, we find that Piper's claims involving fraud are without merit.
 Other Arguments {¶ 34} Piper argues that Heffner was not credible and maintains that Heffner's affidavit differs from his deposition on the issue of whether he had discussed the sale of the property. Further, Piper points out that Heffner said he would have to discuss the sale of the property with his brother and sister; however, Ralph Heffner, Heffner's brother, stated in his deposition that Heffner would only have to discuss major purchases, and that the property in question did not qualify. Piper also points to Heffner's letter to Celina which states that the "current tenants *Page 18 
lease renews shortly." Piper further points out that the ninety-day early out provision in the contract was Heffner's creation, and that Piper called his bank about a loan for the purchase of the property.
 {¶ 35} None of Piper's aforementioned arguments demonstrate a genuine issue of material fact. Whether Heffner discussed the sale of the property does not create a genuine issue of material fact because the issue is not whether he discussed the sale of the property but rather whether he did, in fact, sell the property. Also, whether Heffner needed to discuss the sale of the property with his brother and sister, which party wanted the ninety day early out provision, and whether Piper contacted his bank about a loan for the property does not create a genuine issue of material fact because those facts do not indicate that Heffner agreed to sell the property to Piper.
 Summary Judgment Analysis {¶ 36} As previously noted, summary judgment is appropriate where: (1.) there is no genuine issue of material fact; (2.) the moving party is entitled to judgment as a matter of law; and (3.) reasonable minds could come to but one conclusion when viewing the evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party. Civ. R. 56(C); Grafton, 77 Ohio St.3d at 105, citing State ex.rel. Cassels, 69 Ohio St.3d at 219. *Page 19 
 {¶ 37} In the present case, Piper argued that he had an oral contract to purchase the property. However, we find that there are no exceptions under the facts of this case, which would preclude the application of the Statute of Frauds. While there was a written agreement to lease the property, there was no written agreement involving the purchase of the property signed by Heffner Investments, and the Statute of Frauds requires a signed writing. See R.C. 1335.05.
 {¶ 38} After reviewing the record, we find that there are no genuine issues of material fact, that Heffner Investments is entitled to judgment as a matter of law, and that even when viewing the evidence in a light most favorable to Piper, reasonable minds can come to only one conclusion and that conclusion is adverse to Piper. Thus, we hold that the trial court properly granted summary judgment to Heffner Investment on its claims against Piper and on Piper's claims against Heffner Investments.
 Offer to Sell the Property, Waiver, and Estoppel {¶ 39} Heffner Investments claims that on April 12, 2005, it provided Piper with a real estate contract for the sale of the property for $180,000, which was the identical purchase price that Piper alleged was agreed upon in the oral agreement, and that Piper admitted in his deposition that he was unaware of any term in the contract which differed from the oral agreement. Further, Heffner Investments *Page 20 
claims that the offer was for acceptance until April 15, 2005, and that Piper refused to accept the agreement or close on the purchase of the property.
 {¶ 40} Piper counters by arguing that Heffner Investments offer is inadmissible, and that the offer is not the same exact agreement that Piper had with Heffner Investments. Further, Piper argues that the offer expired before Piper or his attorney saw it.
 {¶ 41} Since we find that the trial court properly granted summary judgment to Heffner Investments on its claims against Piper and Piper's claims against Heffner Investments, we need not decide Heffner Investment's arguments regarding waiver and estoppel.
 {¶ 42} Accordingly, Piper's first and third assignments of error are overruled.
 ASSIGNMENT OF ERROR NO. II The trial court erred in granting the City of Celina's motion for summary judgment (motion to dismiss), dismissing Steven E. Piper and Steven E. Piper, dba Piper Trucking as parties to the appropriation portion of the eminent domain case, Case No. 05-CIV-111.
 {¶ 43} In his second assignment of error, Piper argues that the trial court erred in granting Celina's motion for summary judgment/motion to dismiss as the appropriation proceedings were improper and exhibited collusion and bad faith by Celina. *Page 21 
 {¶ 44} By contrast, Celina argues that Piper claimed two ownership interests in the property: as a holdover tenant and based on an oral lease. Celina argues that holdover tenants generally do not have a compensable interest. Further, Celina argues: Piper is not entitled to compensation on an unexercised option to purchase; an oral option to purchase is not valid, if there even was an option; and Heffner withdrew his offer to sell after Piper refused. Celina concludes that if Piper has no compensable interest, then his participation in the appropriation action was not appropriate.
 {¶ 45} R.C. 163.01 defines property to include "any estate, title or interest in any real property which is authorized to be appropriated by the agency in question, unless the context otherwise requires." R.C. 163.01(D).[5] An owner is defined by the statute to include "any individual, partnership, association, or corporation having any estate, title, or interest in any real property sought to be appropriated." R.C. 163.01(C).
 {¶ 46} "Generally speaking, only those who hold ownershipinterests are entitled to compensation when that property is appropriated under the power of eminent domain." 38 Ohio Jurisprudence 3d. (2008), Eminent Domain, Section 138, citing American Jurisprudence 2d, Eminent Domain § 257, emphasis added. "It is well settled in Ohio that in an appropriation proceeding both the owner and *Page 22 
one having a leasehold interest in property may assert claims for damages and be compensated for whatever loss directly results from the appropriation." Cincinnati v. Spangenberg (1973), 35 Ohio App.2d 168,170, 300 N.E.2d 457; 38 Ohio Jurisprudence 3d. (2008), Eminent Domain, Section 138, citing Am.Jur.2d, Eminent Domain § 257. However, the lessee may be precluded from compensation for an appropriation based upon the terms of the lease. Spangenberg, 35 Ohio App.2d at 171.
 {¶ 47} Consequently, we must determine whether Piper had a compensable ownership interest in the property that would necessitate him being included as a party to the appropriation proceedings.
 {¶ 48} In our discussion of Piper's first and third assignments of error, we determined that the trial court did not err in granting summary judgment. In reaching that determination, we found that Piper was not the owner of the property in question. The terms of Piper's lease agreement provided that the lease would commence on September 1, 2002 and end on August 31, 2003. Piper was no longer a lessee as of September 1, 2003, and thus, Piper did not have any leasehold interests in the property. As a result, we find that Piper did not have any compensable interest in the property, and therefore, the trial court properly granted Celina's motion for summary judgment/motion to dismiss.
 {¶ 49} Piper's second assignment of error is, therefore, overruled. *Page 23 
 ASSIGNMENT OF ERROR NO. IV The trial court erred in granting summary judgment to HIL against Piper on HIL's indemnification claim and ordering that Piper pay HIL's attorney fees.
 {¶ 50} Piper maintains, in his fourth assignment of error, that the indemnification clause should not be expanded to require Piper to pay Heffner Investments attorney fees regarding breach of contract claims, or any claims unrelated to the condition or use of the premises. Further, Piper maintains: that he and Heffner Investments are not of a similar sophistication; that attorney fees were never discussed; that the parties did not share an equal bargaining position; and that Heffner is using the provision as a penalty to Piper and in order to promote litigation.
 Interpretation of an Indemnity Clause {¶ 51} "Ohio law permits the enforcement of indemnity agreements."Centennial Ins. Co. v. Cincinnati Ins. Co. (Nov. 29, 1990), 10th Dist. No. 90AP-352, at *3, citations omitted; American Premier Underwriters,Inc. v. Marathon, 3d Dist. No. 10-03-12, 2004-Ohio-2222, ¶ 28, citations omitted. An indemnity agreement is construed under the same rules as contracts. 18 Ohio Jurisprudence 3d (2008), Contribution, Indemnity, etc., Section 37, citing 41 American Jurisprudence 2d Indemnity § 12. The intent of the parties is generally presumed *Page 24 
from the language used by the parties in their contract. AmericanPremier Underwriters, Inc., 2004-Ohio-2222, at ¶ 29, citation omitted.
 {¶ 52} The lease agreement between Heffner and Piper provided:
 5. Indemnification of Landlord. Tenant agrees to protect, indemnify, defend and save harmless Landlord from and against all claims, demands, causes of action or liability, of any nature whatsoever, except those directly resulting from Landlord's negligent acts or omissions and not covered by the waiver of subrogation provisions of paragraph 4 hereof, occurring on or about the Premises or in any manner growing out of or connected with Tenant's use and occupation of the Premises or the condition thereof. The obligation to indemnify and defend contained in this paragraph includes attorney fees and any expenses incidental to the defense by Landlord of any such claims, demands, causes of action or liability.
(Lease agreement), emphasis added.
 {¶ 53} The trial court found Piper liable on Heffner Investments indemnity claim. The parties agreed to the amount of $14,000 for Heffner Investments' attorney fees on the indemnity claim.
 {¶ 54} Under the clear and unambiguous language of the indemnification clause provided in the lease agreement, Piper is to indemnify Heffner Investments from all causes of action, except those resulting from Heffner Investments negligent acts and omissions, and that obligation to indemnify includes attorney fees. *Page 25 
 Attorney Fees {¶ 55} Piper argues that attorney fee-shifting is not favored; the parties are not of similar sophistication; attorney fees were never discussed; and Heffner Investments is using the attorney fee provision as a penalty and to promote litigation. Piper points to KA Cleaning,Inc. v. Materni, 6th Dist. No. L-05-1293, 2006-Ohio-1989, in which the Sixth District found a contract provision awarding attorney fees unenforceable.
 {¶ 56} Generally, each party to the lawsuit is responsible for paying their own attorney fees. American Premier Underwriters, Inc.,2004-Ohio-2222, at ¶ 23, citation omitted. "However, a prevailing party may recover attorney's fees under three exceptions to that rule: (1) a statute creating a duty to pay the fees, (2) the losing party acted in bad faith, or (3) the parties contract to shift fees." Id., citingMcConnell v. Hunt Sports Enter. (1999), 132 Ohio App.3d 657,725 N.E.2d 1193. In addition, "[a]n agreement to indemnify another for legal fees is generally enforceable." Id. at ¶ 28, citations omitted.
 {¶ 57} In the present case, the parties' lease agreement listed an indemnification provision which included attorney fees. Accordingly, we must determine whether the attorney fee provision is enforceable.
 {¶ 58} " `Contractual attorney fee provisions are unenforceable * * * in the following situations: (1) when the parties do not share an equal bargaining *Page 26 
position; (2) when the terms of the provision are not freely negotiable; (3) when the attorney fee provision promotes litigation or illegal acts; or (4) when the attorney fee provision acts as a penalty.'" K.A.Cleaning, Inc., 2006-Ohio-1989, at ¶ 10, quoting Motorist Insurance Co.v. Shields, 4th Dist. No. 2387, 2001-Ohio-2387.
 {¶ 59} In the present case, the parties were both business owners and there is no indication that they did not share an equal bargaining position. Ron Piper, Piper's father, initially approached Heffner Investments about leasing the property. Although attorney fees were never discussed between the parties, the indemnity provision is clearly and unambiguously in the contract. There is no evidence in the record to show that the provisions in the lease agreement were not freely negotiable. In addition, there is no indication that the attorney fee provision in the lease agreement promoted litigation or acted as a penalty.
 {¶ 60} Consequently, we find that the attorney fee provision is enforceable in this case. As a result, we find that the trial court did not err when it determined that Piper was liable under the indemnification clause. In addition, the parties stipulated to the amount of damages being in the amount of $14,000, and thus, the amount of damages is not in dispute.
 {¶ 61} Piper's fourth assignment of error is, therefore, overruled. *Page 27 
 ASSIGNMENT OF ERROR NO. V The court erred by granting summary judgment to HIL awarding interest on unpaid rent.
 {¶ 62} In his fifth assignment of error, Piper argues that the trial court erred when it awarded Heffner Investments interest on the unpaid rent. Piper maintains that no interest should be awarded. However, if the trial court does award interest, the amount of 24% annual interest is a commercially unreasonable amount of interest.
 {¶ 63} R.C. 1343.03 provides for the payment of interest on money due and payable upon contracts, unless a contract provides a different rate of interest on the money due and payable. R.C. 1343.03(A).[6]
 {¶ 64} This court has previously stated that the mandatory language used in R.C. 1343.03(A) "means that the trial court must award prejudgment interest where appropriate." W W Roofing Siding, Inc. v.H.P. Group, L.L.C., 3d Dist. No. 5-01-11, 2001-Ohio-2248, at *2, citations omitted; Butterfield v. Moyer, 3d Dist. No. 8-04-04,2004-Ohio-5891, ¶ 14, citations omitted.
 "For entitlement to a rate different than the statutory rate of interest to be charged, R.C. 1343.03(A) set forth two prerequisites: (1) there must be a written contract between the parties; and (2) that contract must provide a rate of interest *Page 28 with respect to money that becomes due and payable. For there to be a written contract, there must be a writing to which both parties have assented."
PW.F., Inc. v. C.S.U. Pizza, Inc. (1993), 91 Ohio App.3d 724, 729,633 N.E.2d 606, 609, quoting Hobart Bros. Co. v. Welding SupplyServ.,Inc. (1985), 21 Ohio App.3d 142, 144, 21 OBR 152, 486 N.E.2d 1229, 1232. In the present case, the parties have a written lease agreement which provided: "[i]f Tenant shall fail to pay any rent when due, such unpaid amount shall bear interest at the rate of two percent (2%) per month from the due date until paid." (Lease Agreement attached to complaint filed on 3/3/04). Thus, both requirements for applying a different interest rate than the interest rate provided by statute have been met.
 {¶ 65} In its judgment entry, the trial court found the interest rate of 2% per month to be commercially reasonable, and the trial court awarded prejudgment interest on the unpaid rent in the amount of $25,727.52 though April 30, 2007. (JE 6/5/07).
 {¶ 66} The written lease agreement, which was signed by both parties, provided that the prejudgment interest rate on unpaid rent would be at the rate of 2% per month. In addition, there is nothing to suggest that 2% per month or 24% annually is commercially unreasonable. Consequently, we find the trial court did not err in awarding Heffner Investments interest at the rate of 2% per month on the amount of rent due and owing. *Page 29 
 {¶ 67} However, the following exchange occurred during William Heffner's deposition regarding the payment of the rent:
 Q. * * * My question and my point is, do you want the rent — I'm not going to send you a rent check if you're just going to send it back, so you decide what you want to do.
 MR. MYERS: Can we go off the record?
 (Off the record.)
 MR. WILSON: While we were off record, counsel had a discussion that we will, Steve Piper will escrow his $500 monthly rent into my escrow account, which will be paid to Mr. Myers upon completion of the litigation.
 MR. MYERS: That's a correct statement.
 MR. WILSON: And such that we will not be sending, Piper Trucking will not be sending rent checks to Heffner Investments. Instead, they will be held in my trust account until we determine where it should go. In any event, it will go to Heffner Investments regardless of the outcome of the litigation.
 MR. MYERS: Correct statement.
 MR. WILSON: As and for rent.
(Heffner's depo. at 70-71).
 {¶ 68} From the transcripts of Heffner's deposition, it is clear that Heffner Investments and Piper agreed to Piper placing the rent into his attorney's escrow account. In his deposition, Piper indicated that he was not sure if the payments were current but that he thought the payments were fairly current. (Piper Depo. at 12). *Page 30 
 {¶ 69} We remand this case to the trial court for a determination as to whether Piper's payments into the attorney escrow account were current. To the extent that Piper's rent payments into the attorney escrow account were not current, the trial court properly determined that prejudgment interest of 2% per month be applied to that amount. However, interest cannot be applied to the rent that was paid by Piper into his attorney's escrow account, as Piper and Heffner Investments had agreed to the deposit of the rent into the escrow account.
 {¶ 70} Having found error prejudicial to Piper in the determination of the amount of interest on the unpaid rent, we reverse the judgment of the trial court in part and remand the matter for further proceedings consistent with this opinion; however, we affirm the trial court's judgment in the other particulars assigned and argued.
Judgments Affirmed in Part, Reversed in Part and Causes Remanded.
 SHAW, P.J. and ROGERS, J., concur.
[1] However, there appears to have been an agreement reached between the parties in which Piper would make rent payments into his attorney's escrow account. (Heffner Depo. at 71). In his deposition, Piper indicated that he was not sure if the payments were current, but he thought that it was fairly current. (Piper Depo. at 12).
[2] Piper filed a motion to consolidate Case Nos. 04-CIV-036, 05-CIV-076, and 05-CIV-111. The three cases were subsequently consolidated. Mercer County Case No. 05-CIV-076 was voluntarily dismissed on August 3, 2006, and refiled in Mercer County Case No. 06-CIV-182. That case is not being appealed as a part of this present appeal; however, that case is currently pending before this court in a separate case, Appellate Case No. 10-07-21.
[3] According to the agreed judgment entry filed on June 5, 2007, Piper's counsel filed a notice dismissing the complaint under Civ. R. 41(A) on August 3, 2006, and later, refiled an identical complaint against Celina in Case No. 06-CIV-182.
[4] The oral arguments have since been heard in Case No. 10-07-21, which is currently pending before this court.
[5] R.C. 163.01 has since been revised pursuant to 2007 S 7, effective 10/10/07. However, since the appropriation action was filed on July 18, 2005, we will apply the earlier version of the statute in this case.
[6] R.C. 1343.03 has been amended by 2004 H 212, effective June 2, 2004. This court has previously noted that the statute was intended to act prospectively except for issues regarding the applicable interest rate. Conway v. Dravenstott, 3d Dist. No. 3-07-05, 2007-Ohio-4933, footnote three (discussing R.C. 1343.03(C)). Consequently, we apply the 2001 S 108, § 2.01, eff. July 6, 2001, which was the version of the statute in effect when the cause of action arose. *Page 1