OPINION
{¶ 1} Appellant, Marathon Pipe Line Company (hereinafter "Marathon"), appeals the judgment of the Mercer County Court of Common Pleas, in which it ordered Marathon to pay rent to appellee, American Premier Underwriters, Inc. ("APU"), pursuant to a crossing agreement and ordered Marathon to remove an oil pipeline from an easement reserved by APU.
 {¶ 2} The parties herein have previously appealed to this court regarding the rights and obligations pursuant to the crossing agreement and the nature of the easement reserved by APU. The facts and procedural history pertinent to this appeal are as follows.
 {¶ 3} In 1951, a crossing agreement was entered into by Cincinnati, Van Wert and Michigan Railroad Company and Ohio Oil that allowed an oil pipeline to be placed and maintained on an easement owned by the railroad company. As compensation for this use, rent was to be paid. The agreement provided that it could be revoked upon thirty days notice and would terminate if the use of the pipeline were discontinued, or if the pipeline was removed or abandoned. Marathon became Ohio Oil's successor in interest to the pipeline in 1959.
 {¶ 4} In 1985, Cincinnati, Van Wert and Michigan Railroad Company sold the real estate on which Marathon's pipeline was located to Ronald and Karen Piper (hereinafter "Pipers"). In the deed, the railroad reserved "permanent and perpetual easements in gross * * * for all existing wire and pipe facilities or occupations whether or not covered by license or agreement between Grantor and other parties * * * and all rentals * * * resulting from such occupations, agreements and licenses and from the assignment or conveyance of such easements." APU acquired the easement in 1994.
 {¶ 5} In 1996, Marathon discontinued rent payments to APU. Pursuant to the licensing agreement, APU sent notice to Marathon that it was revoking and terminating the license. APU also demanded that the pipeline be removed from the property, as provided by the licensing agreement. Following lengthy proceedings in the Mercer County Court of Common Pleas, the parties appealed to this court for the first time. See Am.Premier Underwriters, Inc. v. Marathon Pipe Line Co., Mercer App. No. 10-2001-08, 2002-Ohio-1299.
 {¶ 6} We rendered a decision in the first appeal on March 20, 2002. In Am. Premier Underwriters I, we found that an easement in gross was properly reserved when the real estate was sold to the Pipers. We also found that the crossing agreement was a valid contract and that Marathon owed rent in accordance with the agreement. The case was subsequently remanded for determination of the amount of rent owed by Marathon to APU and whether, pursuant to the crossing agreement, Marathon must remove its pipeline from the subject property.
 {¶ 7} On remand, the trial court found that Marathon owed rent from 1996, when the company discontinued payments, through 2002 in the amount of $2,514.45, plus pre-judgment interest in the amount of $730.83, as well as any rent which may accrue until such time it is determined no further payments are due. The trial court further found that Marathon committed a material breach of the crossing agreement by Marathon's discontinuing payment of rent. The trial court determined that in 1996, after Marathon had ceased rent payments, APU had provided thirty days notice to Marathon that the agreement was being revoked. Therefore, pursuant to the crossing agreement, Marathon was ordered to remove the pipeline at its own expense. In the event Marathon failed to do so, the trial court found APU would be entitled to remove the pipeline and Marathon would have the burden of the expense. The trial court also found that APU was not entitled to attorney fees for this action.
 {¶ 8} It is from this decision that Marathon appeals, asserting two assignments of error for our review. APU asserts one assignment of error on cross-appeal.
 ASSIGNMENT OF ERROR NO. I The trial court erred in ordering that Marathon remove itspipeline from the property.
 {¶ 9} Although this case involves multiple property transfers, easements in gross and grants by reservation, the issue, as presented by Marathon, concerns the interpretation of a contract. As stated herein, the predecessors in interest of Marathon and APU entered into a crossing agreement in 1951. In our previous opinion, we found this crossing agreement to be a valid and enforceable contract between Marathon and APU. Am.Premiere Underwriters, Inc. v. Marathon Pipe Line Co., Mercer App. No. 10-2001-08, 2002-Ohio-1299.
 {¶ 10} Marathon argues that when APU terminated the crossing agreement, its easement in gross was also effectively terminated since APU only reserved an "easement in gross for existing wire and pipeline occupancies" when the land was conveyed to the Pipers. Marathon also maintains that it acquired an easement from the Pipers in August 2002, after the termination and revocation of the crossing agreement. Therefore, Marathon asserts that after it acquired an easement from the Pipers, APU no longer had an enforceable right of removal under the crossing agreement because the pipeline was no longer on the Pipers' premises. APU, on the contrary, argues that termination of the crossing agreement did not terminate APU's easement. Consequently, the Pipers had no interest they could convey to allow Marathon to maintain its pipeline and the conveyance by the Pipers is a legal nullity, APU maintains.
 {¶ 11} The interpretation of a contract which is clear and unambiguous is a question of law. State ex rel. Parsons v.Fleming (1994), 68 Ohio St.3d 509, 511. Questions of law are subject to a de novo review. Wiltberger v. Davis (1996),110 Ohio App.3d 46, 51-52. Therefore, we consider the evidence independently and without deference to the trial court's findings. Schuch v. Rogers (1996), 113 Ohio App.3d 718, 720.
 {¶ 12} Contracts are to be interpreted to carry out the intent of the parties as evidenced by the actual language of the contract. Skivolocki v. East Ohio Gas Co. (1974),38 Ohio St.2d 244, 248. The crossing agreement at issue in the case sub judice states:
This agreement and the license and privilege it confers may berevoked and terminated at the option of [APU] at any time bygiving thirty (30) days' written notice to [Marathon] * * * andupon the expiration of said thirty (30) days after service ofsaid notice, this agreement and the license and privilege herebygranted shall be absolutely terminated and extinguished; andthereupon [Marathon] shall remove said work from premises of[APU] and restore same to their former condition at the expenseof [Marathon], or on the failure of [Marathon] so to do, [APU]may remove said work at the expense of [Marathon], which thelatter hereby expressly agrees to pay on demand
 {¶ 13} The trial court found there was no dispute as to whether APU complied with the notice requirements before terminating the crossing agreement. Therefore, the trial court ordered Marathon to remove its pipeline in accordance with the terms of the agreement.
 {¶ 14} After reviewing the record, we find that the language of the agreement is unambiguous. It is clear that the parties intended the removal of the pipeline in the event of revocation or termination of the agreement. The agreement clearly states that after proper notice of revocation or termination of the agreement, Marathon shall remove the pipeline at its own expense. Moreover, Marathon stipulated to this fact in the trial court.
 {¶ 15} Contrary to Marathon's claim that the termination of the crossing agreement also terminated APU's easement rights, we find the termination of the agreement in 1996 had no effect on the easement that APU had expressly reserved in its deed to the Pipers. APU's easement is an interest in the Pipers' land It gives APU a right to a limited use or enjoyment of that landCincinnati Entertainment Assoc., Ltd. v. Hamilton Cty. Bd. ofCommrs. (2001), 141 Ohio App.3d 803. The crossing agreement with Marathon, conversely, is a contract by which APU allowed Marathon to use its easement. Unlike a right, it is only a privilege extended by APU, permitting Marathon's entry onto the land for a particular purpose. Id.
 {¶ 16} The revocation of Marathon's privilege to use the easement by way of APU's termination of the crossing agreement extinguished neither APU's interest in the use or enjoyment of the easement nor APU's right to pursue a remedy for Marathon's breach.
 {¶ 17} In the alternative, Marathon asserts, if APU's easement was not extinguished by the termination of the crossing agreement, the easement was not exclusive. Marathon contends that because language of exclusivity was not included in the reservation grant, nothing prevented the Pipers from granting a pipeline easement to Marathon.
 {¶ 18} In our previous decision, we found that APU reserved an easement in gross when the real estate in question was transferred to the Pipers. The deed reserved a "permanent and perpetual easement in gross" for all "existing wire and pipe facilities." Emphasis added. Since Marathon's pipeline existed at the time of the transfer to the Pipers, we find that APU had an exclusive right to that easement.
 {¶ 19} Based upon the evidence of record, we hold that Marathon's breach of the crossing agreement entitled APU to the remedy provided for by the agreement. We also hold that APU has an enforceable right of removal even after the termination of the crossing agreement. Therefore, the trial court did not err in ordering the removal of the pipeline at Marathon's expense.
 {¶ 20} Accordingly, appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. II The trial court erred in awarding APU rents under the LicenseAgreement after Marathon acquired a pipeline easement from thefee simple owners of the Property.
 {¶ 21} This assignment of error is based on the premise, as argued in Marathon's first assignment of error, that Marathon acquired a pipeline easement from the Pipers upon APU's termination of the licensing agreement. Since we have disposed of the first assignment of error adversely to Marathon, the argument that Marathon did not have a further obligation to pay for its use of the easement is without merit.
 {¶ 22} Therefore, appellant's second assignment of error is overruled.
 CROSS-APPELLANT'S ASSIGNMENT OF ERROR NO. I APU is entitled to reimbursement of its attorneys' fees andcosts incurred in connection with prosecuting this action.
 {¶ 23} Under the "American Rule," each party involved in the litigation is responsible for his or her own attorney's fees.Sorin v. Bd. of Edn. of Warrensville Heights Sch. Dist. (1976),46 Ohio St.2d 177, 179. However, a prevailing party may recover attorney's fees under three exceptions to that rule: (1) a statute creating a duty to pay the fees, (2) the losing party acted in bad faith, or (3) the parties contract to shift fees.McConnell v. Hunt Sports Enter. (1999), 132 Ohio App.3d 657.
 {¶ 24} APU does not claim that there is a statutory duty to pay attorney fees, but does assert that the other exceptions apply. First, APU argues that Marathon's discontinuation of rent payments constituted bad faith. Second, APU argues that the parties agreed to shift fees pursuant to the crossing agreement. APU argues Marathon is obligated to indemnify APU for "suits, costs or expenses" it may sustain which are caused by the "maintenance, use or presence" of the pipeline or from its removal. APU also advances a third argument. APU claims that after Marathon was told to remove the pipeline and refused, it became a trespasser and that attorney fees are available in a trespass action.
 {¶ 25} Regarding APU's first argument, we do not find that attorney fees are warranted on the basis of APU's allegation of bad faith against Marathon, as the record does not disclose evidence sufficient to support this allegation. We also do not find persuasive APU's third argument, that attorney fees are available as the result of Marathon's alleged trespass. APU did not initiate a trespass action against Marathon. Rather, the case at bar involves a breach of contract. Therefore, APU can only recover attorney fees from Marathon upon a finding that the parties contracted to shift fees.
 {¶ 26} APU claims that the crossing agreement provides for fee shifting and requires Marathon to indemnify APU for attorney fees. The agreement provides:
[Marathon] shall and will at all times hereafter indemnify andsave harmless [APU] from and against any and all detriment,damages, losses, claims, demands, suits, costs, or expenses which[APU] may suffer, sustain, or be subject to, directly orindirectly, caused either wholly or in part by reason of thelocation, construction, maintenance, use of presence of[pipeline] as permitted by this license or resulting from theremoval thereof.
 {¶ 27} The trial court dismissed APU's claim for attorney fees, strictly construing the language of the agreement. The trial court found that although Marathon was bound to indemnify APU for "suits, costs and expenses," the agreement did not specifically delineate attorney fees as part of those suits, costs or expenses.
 {¶ 28} An agreement to indemnify another for legal fees is generally enforceable. Center Ridge Ganley, Inc. v. Stinn
(1991), 71 Ohio App.3d 514, 523, citing Worth v. Aetna Cas. Sur. Co. (1987), 32 Ohio St.3d 238. However, a trial court retains the discretion to determine if an attorney fee is warranted. Center Ridge at 523.
 {¶ 29} The nature of an indemnity relationship is determined by the intent of the parties as expressed by the language used. See Cleveland Window Glass Door Co. v. Natl. Surety Co.
(1928), 118 Ohio St. 414. Generally, courts presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement. Kelly v. Med. Life Ins. Co.
(1987), 31 Ohio St.3d 130. When the terms in a contract are unambiguous, a court will not create a new obligation by finding an intent not expressed in the clear language employed by the parties. See Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, 246.
 {¶ 30} In examining the language employed in the indemnification clause, we cannot find that the trial court erred in holding that attorney fees were unavailable. The agreement contemplates that indemnity is available only for "suits, costs and expenses" brought by a third party and not for a dispute between the parties to the agreement concerning the meaning of their contract. If indemnity between the parties to the agreement was contemplated, the parties could have specifically included a provision for the payment of attorney fees, but they did not do so. Parties have a fundamental right to contract freely with the expectation that the terms of the contract will be enforced. TheBluffs of Wildwood Homeowners' Assn., Inc. v. Dinkel (1994),96 Ohio App.3d 278, 282. The trial court herein enforced the licensing agreement according to its terms. Therefore, we cannot find that attorney fees are available to APU pursuant to the indemnity clause in the crossing agreement.
 {¶ 31} Accordingly, cross-appellant's first assignment of error is overruled.
 {¶ 32} Having found no error prejudicial to appellant or cross-appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
Shaw, P.J., concurs.
Bryant, J., concurs in judgment only.