JONES, Appellee,

v.

JONES, Appellant.

[Cite as *Jones v. Jones,* 179 Ohio App.3d 618, 2008-Ohio-6069.]

Court of Appeals of Ohio,
Third District, Seneca County.

No. 13–08–16.

Decided Nov. 24, 2008.

620

Mary L. Hool, for appellee.

Charles R. Hall Jr., for appellant.

Rogers, Judge.

{¶ 1} Defendant-appellant, Jay J. Jones, appeals from the judgment of the Seneca County Court of Common Pleas, Domestic Relations Division, ordering him to pay plaintiff-appellee, Evelyn Jones, $8,430.53, plus statutory interest from July 18, 2002, court costs incurred, and $2,000 of Evelyn's reasonable attorney fees. On appeal, Jay argues that the trial court erred by denying his motion to dismiss for lack of subject-matter jurisdiction, that the trial court erred by denying his motion to dismiss for failure to state a claim, that the trial court erred in finding for Evelyn as she failed to present sufficient evidence of unjust enrichment to meet her burden of proof, that the trial court erred by denying his motion to dismiss for failure to join an indispensable party, and that the trial court erred in awarding attorney fees and costs to Evelyn without a presentation of evidence on the issue. Based on the following, we affirm in part and reverse in part the judgment of the trial court.

{¶ 2} In December 1999, Evelyn filed a petition for dissolution of her marriage to Jay in the Seneca County Court of Common Pleas, a petition that incorporated a separation agreement. During the course of the marriage, the parties had purchased a business called the "Whippy Dip," for which they took out a line of credit ("home equity loan") on their residence at 628 Northview Dr., Fostoria, Ohio ("the residence"), to help pay expenses of the business.

{¶ 3} In January 2000, the trial court approved the petition for dissolution and adopted the separation agreement. The separation agreement provided:

The parties agree that Wife shall remain in the home and shall be responsible for all mortgage payments, utilities, taxes, insurance, and maintenance on said residence * * * and shall hold Husband harmless thereof. * * *

Since this real estate is also mortgaged in 1999 on a loan of Husband's for his Whippy Dip business, the parties further agree as follows:

* * *

B. Husband shall make timely payments to Key Bank or their successor, for the Whippy Dip mortgage, on which the subject property above is also pledged as collateral.

* * *

The parties are also the owners of the real estate and business located at 400 S. Main St., Fostoria, Seneca County, Ohio, known as the Whippy Dip. * * *

* * *

The parties agree that Husband shall retain the said real estate and Whippy Dip business and shall be responsible for all mortgage payments, utilities, taxes, insurance, and maintenance on said real estate and business immediately upon signing of this agreement, and shall hold Wife harmless thereof.

{¶ 4} In September 2003, Evelyn filed a motion for contempt, or, in the alternative, a complaint for unjust enrichment, alleging that when she sold the residence, she was forced to pay off the remainder of the home equity loan for the Whippy Dip, which was Jay's sole responsibility under the separation agreement, and that Jay refused to reimburse her for this payment.

{¶ 5} In February 2004, Jay filed a motion to dismiss Evelyn's complaint for unjust enrichment and motion for contempt on the grounds that Evelyn failed to state a claim on which relief could be granted, that the court lacked subject-matter jurisdiction over the action, and that Evelyn failed to join an indispensable third party, Key Bank.

{¶ 6} In May 2004, the magistrate dismissed Evelyn's motion for contempt, but found that her complaint for unjust enrichment properly stated a claim, that the trial court had subject-matter jurisdiction to enforce the separation agreement, and that Key Bank was not an indispensable party to the action.

{¶ 7} In July 2004, a hearing was held on Evelyn's motion, at which the following testimony was adduced.

{¶ 8} Lou Ann Fleming, a relationship manager with Key Bank, testified that Jay had three loans that involved the Whippy Dip business. One loan was taken out on March 2, 1999, for $28,419.78, secured by the real estate on which the Whippy Dip was located, another on March 2, 1999, for $55,244.90, secured by 699 shares of Quest Communications Stock, and a third loan on February 8, 1999,

that was a home equity line of credit for $44,000, secured by the residence; that two loans were dispersed from the home equity line of credit in March 1999; that Evelyn's name was not on the February 1999 home equity loan; and that in March 2001, Key Bank subordinated the home equity loan to a loan from Old Fort Bank. She continued that a title company contacted her to find out what amount was owed on the home equity line of credit because Evelyn wanted to the sell the residence and was required to pay off this loan before selling, but that she told the title company she was required to get Jay's permission before releasing the payoff figures because Evelyn was not on the loan.

{¶ 9} Evelyn testified that after the dissolution took place in 2000, she refinanced the original mortgage on the residence with Old Fort Bank to get a lower interest rate; that in order to obtain the refinancing, Key Bank was required to subordinate their home equity loan on the residence; that when she decided to sell the residence, she was told that the home equity loan must be paid in full; that she contacted Jay about making arrangements for him to pay off the home equity loan, but that he would only continue to tell her that "its not a good time, its not a good time"; that she paid off the home equity loan so she could sell the residence; that she never made any prior payments on the home equity loan and Jay always paid the home equity loan from the time of the dissolution agreement until she sold the residence; but that when she paid off the loan and sold the residence, he did not pay her anything.

{¶ 10} Charity Hazelton, a closing processor with Golden Key Title Agency, testified that she was the closing agent for Evelyn when she sold the residence; that while doing a title search, she discovered there was a home equity loan from Key Bank and a mortgage from Old Fort Bank on the residence; that when she attempted to obtain the payoff information for the Key Bank home equity loan, she was denied permission because the loan was solely in Jay's name; that with Jay's permission, they obtained the payoff information; and that a check was issued to Key Bank to extinguish the home equity loan.

{¶ 11} Claudia Myers, realtor for Wise Realty, testified that she was involved with the sale of Evelyn's home; that during the selling process, she discovered there was a home equity loan on the house that was for Jay's Whippy Dip business; that she contacted Jay to inform him that they were going to pay off the home equity loan, but that he needed to pay Evelyn back because it was not a gift on her part; that he stated he understood the transaction and what he was required to do; and that the payoff on the home equity loan was $8,430.53.

{¶ 12} Carol Reffner, Evelyn's attorney during her separation, testified that Evelyn told her that she was forced to pay off the home equity loan in order to sell her house; that Evelyn requested that she write a letter to Jay informing him of this pay off and his need to reimburse her; that she wrote a letter to Jay,

proposing two repayment options, paying $8,000 immediately, or paying about $200 a month for four years; and that Jay never responded to the letter.

{¶ 13} In May 2005, the magistrate ruled for Evelyn, finding that Jay was solely responsible for paying the home equity loan pursuant to the January 2000 separation agreement and that he was unjustly enriched as a result of Evelyn's payment of the loan. In the decision, the magistrate issued the following findings of fact:

1. The Court has subject matter jurisdiction and jurisdiction over the parties as the parties' marriage was dissolved by this Court on January 24, 2000.
* * *

4. During the marriage of Plaintiff and Defendant, Defendant purchased a business and real property on which the business was located and operated which was and is known as the "Whippy Dip". On February 8, 1999, Jay Jones, Borrower, mortgaged 628 Northview Drive, Fostoria, OH, the residence of Jay Jones and his then wife, Evelyn Jones, when he entered into a "Key Equity Options agreement" with [sic] required a mortgage on the 628 Northview Dr., Fostoria, OH home * * * as security for an equity line of $44,000.
* * *

9. Evelyn Jones sold the Northview Dr. property on or about July 18, 2002. The Court heard testimony that Key Bank required both mortgages, the mortgage on the Northview Dr. property and the mortgage on the "Whippy Dip" real estate to be paid off. The Court heard testimony that Evelyn Jones * * *, her attorney, and the realtor all contacted Jay Jones prior to the real estate closing for the sale of the Northview Dr. property advising him that the Key Bank loan was required to be paid off in order for Evelyn Jones to sell the Northview Dr. property. * * * At the time of the closing on July 18, 2002, $8,430.53 was paid to Key Bank in full satisfaction of the mortgage on the "Whippy Dip". The same mortgage that Jay Jones had agreed and the Court Ordered that Jay Jones make timely payments and hold Evelyn Jones harmless.

10. Since July 2002, Jay Jones has made no payments and has taken no action to hold Evelyn Jones harmless as to the Key Bank loan that was paid off when Evelyn Jones sold the Northview property.

11. This Court has jurisdiction to review the original property division so as to effectuate the judgment Ordered previously. * * * In this case, the parties clearly agreed and this agreement was included in the Separation Agreement and Property Settlement * * * that Plaintiff was to receive the marital residence located at 628 Northview Dr. property [sic] and be responsible for that mortgage. * * * It is further clear to this Court that the parties understood that the Northview Dr. property was encumbered by a mortgage

which benefited the Whippy Dip as the Separation Agreement and Property Settlement was clear, "Since this real estate is also mortgaged in 1999 on a loan of Husband's for his Whippy Dip business, the parties further agree * * * B. Husband shall make timely payments to Key Bank or their successor, for the Whippy Dip mortgage, on which the subject property is also pledged as collateral." * * * Husband, Jay Jones, is to assume all responsibility for the Key Bank mortgage * * *. There is no condition in the Separation Agreement and Property Settlement that absolves Jay Jones of the requirement that he make timely payments on the Key Bank mortgage. * * *

12. * * * This Court FINDS that competent and credible evidence has been presented to this Court such that this Court finds that Jay Jones has been unjustly enriched, as Evelyn Jones was required to pay a debt that he agreed he would assume and hold Evelyn Jones harmless thereon. Jay Jones has not in any way reimbursed Evelyn Jones for the payment of the Key Bank debt. * * * The Separation Agreement and Property Settlement did not contain a provision that Evelyn Jones could not move out of the Northview Dr. residence before the mortgage to Key Bank was paid in full. * * *

* * *

15. * * * Based on the above FINDINGS OF FACT AND CONCLUSIONS OF LAW, this Court Orders as follows:

A. Jay Jones shall pay to Evelyn Jones, within 60 days of the filing of this Decision, the sum of $8,430.53 plus statutory interest from July 18, 2002. * * *

B. Jay Jones shall pay the court costs incurred in this matter.

C. Jay Jones shall pay $2,000.00 of Plaintiff's reasonable attorney fees incurred in this matter.

{¶ 14} Subsequently, Jay filed objections to the magistrate's decision.

{¶ 15} In July 2006, the trial court overruled the objections and adopted the magistrate's decision.

{¶ 16} It is from this judgment that Jay appeals,[1] presenting the following assignments of error for our review.

*Assignment of Error No. I*

The trial court erred when it denied the appellant's motion to dismiss for lack of subject matter jurisdiction.

---

1. This court twice dismissed Jay's appeals, finding them to not be final, appealable orders pursuant to R.C. 2505.02. Accordingly, the trial court refilled a correct amended judgment entry in May 2008, and Jay appeals from that judgment.

*Assignment of Error No. II*

The trial court erred when it denied the appellant's motion to dismiss for failure to state a claim on which relief can be granted.

*Assignment of Error No. III*

The trial court erred in ruling that the appellee had established her claim of unjust enrichment by a preponderance of the evidence.

*Assignment of Error No. IV*

The trial court erred when it denied the appellant's motion to dismiss for failure to join an indispensable party to the cause of action.

*Assignment of Error No. V*

The trial court erred in granting the appellee's claim for unjust enrichment because the appellee failed to present any evidence on the elements of unjust enrichment.

*Assignment of Error No. VI*

The trial court erred as a matter of law in awarding attorney fees to the appellee without any evidence on the issue of attorney fees.

{¶ 17} Due to the nature of Jay's arguments, we elect to address assignments of error three and five together.

*Assignment of Error No. I*

{¶ 18} In his first assignment of error, Jay argues that the trial court erred by failing to dismiss the claim for unjust enrichment, as the trial court did not have subject-matter jurisdiction. Specifically, Jay asserts that the trial court exercised its jurisdiction by altering or modifying the terms of the separation agreement, but that a trial court does not have continuing jurisdiction to alter a division of marital property once it becomes final. We disagree.

{¶ 19} Subject-matter jurisdiction refers to the power of a court to hear and decide a case on the merits. *State ex rel. Jones v. Suster* (1998), 84 Ohio St.3d 70, 75, 701 N.E.2d 1002, citing *Morrison v. Steiner* (1972), 32 Ohio St.2d 86, 61 O.O.2d 335, 290 N.E.2d 841, paragraph one of the syllabus. A motion to dismiss for lack of subject-matter jurisdiction is made pursuant to Civ.R. 12(b)(1), and the standard of review for a Civ.R. 12(b)(1) motion is "whether any cause of action cognizable by the forum has been raised in the complaint." *State ex rel. Bush v. Spurlock* (1989), 42 Ohio St.3d 77, 80, 537 N.E.2d 641. An appellate court reviews the trial court's finding on subject-matter jurisdiction de novo. *Radcliffe*

*v. Radcliffe* (2001), 3d Dist. No. 6–01–05, 2001 WL 1545493, citing *McClure v. McClure* (1997), 119 Ohio App.3d 76, 79, 694 N.E.2d 515.

{¶ 20} The trial court retains jurisdiction to enforce its decree of dissolution of marriage. R.C. 3105.65(B). *Bond v. Bond* (1990), 69 Ohio App.3d 225, 228, 590 N.E.2d 348. "While a trial court does not have continuing jurisdiction to modify a marital property division incident to a divorce or dissolution decree, it has the power to clarify and construe its original property division so as to effectuate its judgment." *Gordon v. Gordon* (2001), 144 Ohio App.3d 21, 24, 759 N.E.2d 431, citing *Wolfe v. Wolfe* (1976), 46 Ohio St.2d 399, 75 O.O.2d 474, 350 N.E.2d 413.

{¶ 21} In this case, the Domestic Relations Division of the Seneca County Court of Common Pleas approved Evelyn's petition for dissolution of marriage and adopted the parties' separation agreement. One requirement of that separation agreement was that Jay was to pay the home equity loan for the Whippy Dip business, which was secured by the marital residence. When the trial court heard Evelyn's claim for unjust enrichment, which alleged that Jay refused to reimburse her for the home equity loan she paid off when she sold the residence, the court was merely exercising its power pursuant to R.C. 3106.65(B) to enforce the requirement in the separation agreement that Jay pay the home equity loan and hold Evelyn harmless. The trial court did not modify the separation agreement, but merely construed its terms in an effort to enforce it appropriately. As such, the trial court properly dismissed Jay's motion to dismiss for lack of subject-matter jurisdiction, as it possessed jurisdiction to hear this claim.

{¶ 22} Accordingly, Jay's first assignment of error is overruled.

### Assignment of Error No. II

{¶ 23} In his second assignment of error, Jay argues that the trial court erred by denying his motion to dismiss for failure to state a claim on which relief can be granted. Specifically, Jay states that the claim of unjust enrichment is an equitable remedy; that equitable remedies cannot be applied when there is a binding contract because the contract terms control; and that the separation agreement is a binding contract, thereby precluding a claim for unjust enrichment. We disagree.

{¶ 24} A motion to dismiss for failure to state a claim on which relief can be granted is made pursuant to Civ.R. 12(B)(6). For a court to dismiss a claim on a Civ.R. 12(B)(6) motion, it must appear that the plaintiff cannot prove any facts in support of his claim that would entitle him to relief. *York v. Ohio State Hwy. Patrol* (1991), 60 Ohio St.3d 143, 144, 573 N.E.2d 1063, citing *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 245, 71 O.O.2d 223, 327 N.E.2d 753. In resolving a Civ.R. 12(B)(6) motion, "the court must presume

all factual allegations of the complaint are true and make all reasonable inferences in favor of the nonmoving party." *Shockey v. Fouty* (1995), 106 Ohio App.3d 420, 424, 666 N.E.2d 304, citing *York*. Appellate review of a trial court's denial of a Civ.R. 12(B)(6) motion is de novo. Id.

{¶ 25} A separation agreement is a contract between two parties, and its validity is governed by contract law, *Haas v. Bauer*, 156 Ohio App.3d 26, 2004-Ohio-437, 804 N.E.2d 80, ¶ 19, but a separation agreement loses its contractual nature when it is incorporated into a divorce decree, and the means of enforcement thereafter is through a power of contempt. *Bugay v. Bugay* (1977) 53 Ohio App.2d 285, 288, 7 O.O.3d 336, 373 N.E.2d 1263, citing *Wolfe v. Wolfe* (1976), 46 Ohio St.2d 399, 75 O.O.2d 474, 350 N.E.2d 413. In order for an equitable claim, such as unjust enrichment, to lie, "it is requisite that the primary right involved be an equitable right as distinguished from a legal right, or that the remedy at law as to the right involved is not full, adequate and complete." *State ex rel. Lien v. House* (1944), 144 Ohio St. 238, 244, 29 O.O. 399, 58 N.E.2d 675.

{¶ 26} In Evelyn's motion for contempt, or, in the alternative, complaint for unjust enrichment, she alleged that pursuant to the separation agreement, she was responsible for the original mortgage on the marital property and Jay was responsible for all loans and expenses of the Whippy Dip, including the home equity loan payments on the residence; and that she was required to pay off the home equity loan in order to sell the residence; and that Jay refused to reimburse her for the loan payoff despite his responsibility under to the separation agreement. All of these factual allegations, taken as true, are sufficient to support a claim for unjust enrichment, if such an equitable remedy is proper in this action.

{¶ 27} In the magistrate's May 2004 decision, he dismissed the motion for contempt, finding that the separation agreement did not explicitly provide for each party's obligation should the home be sold prior to Jay making all payments on the loan, and that, as a result, Jay could not be held in contempt for not paying off the home equity loan immediately when no such requirement is contained in the separation agreement. The magistrate further found that Evelyn's claim for unjust enrichment was proper because the separation agreement lost its contractual nature when it was incorporated into the divorce decree and that Jay would inequitably profit at Evelyn's expense if he was permitted to not reimburse her for the home equity loan payoff, as the separation agreement required him to make all payments on the home equity loan.

{¶ 28} According to the terms of the separation agreement, Jay was required to make payments on the home equity loan for the Whippy Dip. No explicit provision in the agreement governed Jay's obligation should the home equity loan

be paid off in order to sell the house prior to Jay making all required payments; as such, it was proper for the trial court to dismiss the motion for contempt.

{¶ 29} However, the natural interpretation of the separation agreement would be that Jay would have to reimburse Evelyn for such a payoff because he was required to make all home equity loan payments and hold Evelyn harmless thereon. Furthermore, the separation agreement lost its contractual nature after it was incorporated into the divorce decree, thereby rendering any contract claims invalid.

{¶ 30} Because Evelyn properly asserted factual grounds for a claim for unjust enrichment in her complaint, because the separation agreement was no longer a contract after merging into the divorce decree, and because it would be inequitable based on the natural interpretation of the separation agreement for Evelyn to pay the remainder of the home equity loan, the trial court did not err in denying Jay's Civ.R. 12(B)(6) motion.

{¶ 31} Accordingly, Jay's second assignment of error is overruled.

*Assignments of Error Nos. III and V*

{¶ 32} In his third and fifth assignments of error, Jay contends that the trial court erred·in granting Evelyn's claim for unjust enrichment, as she did not prove all elements of the claim. Specifically, Jay argues that Evelyn failed to establish that a benefit was conferred upon him in an inequitable manner and that he was responsible for a "fourth" loan that arose after the dissolution of the marriage. We disagree.

{¶ 33} A quasicontract claim for unjust enrichment contains three elements: " ' "(1) a benefit conferred by a plaintiff upon a defendant, (2) knowledge by the defendant of the benefit, and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." ' " *L & H Leasing Co. v. Dutton* (1992), 82 Ohio App.3d 528, 534, 612 N.E.2d 787, quoting *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 183, 12 OBR 246, 465 N.E.2d 1298, quoting *Hummel v. Hummel* (1938), 133 Ohio St. 520, 525, 11 O.O. 221, 14 N.E.2d 923. Recovery under unjust enrichment is designed to compensate the plaintiff for the benefit he has conferred upon another, not to compensate him for a loss suffered. *Hughes v. Oberholtzer* (1954), 162 Ohio St. 330, 335, 123 N.E.2d 393. In determining whether sufficient evidence has been presented to support a claim, an appellate court must find some competent, credible evidence establishing all essential elements of the claim. *Dixon v. Smith* (1997), 119 Ohio App.3d 308, 318, 695 N.E.2d 284, citing *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

{¶ 34} In the case at bar, Evelyn presented evidence on all elements of unjust enrichment. The separation agreement established that Jay was responsible for making all payments relating to his Whippy Dip business, including the home equity loan on the residence. Claudia Meyers and Evelyn both testified that Evelyn was forced to pay off the home equity loan on the residence before selling it and that the amount of this payoff was $8,430.53. Charity Hazelton, the closing agent, testified that a check was issued to Key Bank to pay off the home equity loan on the residence. Claudia Meyers, Carol Reffner, and Evelyn all testified that they notified Jay of the loan payoff and his need to reimburse Evelyn, as the payoff was not a gift to him, but his responsibility. Evelyn further testified that Jay has not reimbursed her for this home equity loan payoff.

{¶ 35} In his brief, Jay confuses the issues in the case by stating that Evelyn presented no evidence that he was responsible for a "fourth loan" that arose after the separation agreement. This "fourth loan" to which Jay refers is nothing more than Evelyn's refinancing of the original mortgage on the residence, which is in no way relevant to the home equity loan that he was required to pay pursuant to the separation agreement.

{¶ 36} Because we find that competent, credible evidence exists to establish that Jay was unjustly enriched by Evelyn's payoff of the home equity loan for which he was responsible under the separation agreement, we find that the trial court did not err in granting Evelyn's claim for unjust enrichment.[2]

{¶ 37} Accordingly, Jay's third and fifth assignments of error are overruled.

*Assignment of Error No. IV*

{¶ 38} In his fourth assignment of error, Jay asserts that the trial court erred by denying his Civ.R. 12(B)(7) motion to dismiss for failure to join an indispensable party to the action pursuant to Civ.R. 19. Specifically, Jay states that Key Bank should have been made a party to the action because Evelyn claims to have made payment to them to satisfy the home equity loan on the residence. We disagree.

---

2. We note that while the terms of the separation agreement only required Jay to make monthly payments on the home equity loan, the trial court ordered a lump-sum judgment award of $8,430.53 against him to be paid within 60 days of the judgment. The separation agreement clearly holds Jay solely responsible for this loan, and he was ordered to hold Evelyn harmless on this obligation. However, Jay refused to take any action to extinguish the debt when Evelyn sold the house, and he failed to make any arrangements to reimburse Evelyn for her payment of the debt. In July 2002, Evelyn offered to settle the debt by accepting $200 a month for four years; had Jay made these $200 payments, he would have paid off this debt by July 2006. We find nothing in the record that would suggest that such an arrangement would have been more onerous than if he had continued making regular payments on the original debt. Accordingly, we find that the trial court was acting within its discretion in rendering a lump-sum judgment award.

{¶ 39} An appellate court reviews a trial court's ruling on a Civ.R. 12(B)(7) motion de novo. *Englehart v. C.T. Taylor Co.,* 9th Dist. No. 19325, 1999 WL 1215110, citing *Plumbers & Steamfitters Local Union 83 v. Union Local School Dist. Bd. of Edn.,* 7th Dist. No. 97–BA–40, 1998 WL 473335. Civ.R. 12(B)(7) concerns motions to dismiss for failure to join an indispensable party pursuant to Civ.R. 19. Civ.R. 19(A) provides:

> A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (a) as a practical matter impair or impede his ability to protect that interest or (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest, or (3) he has an interest relating to the subject of the action as an assignor, assignee, subrogor, or subrogee.

{¶ 40} In this case, Evelyn paid off the home equity loan to Key Bank when she sold the residence. Thus no debt or obligation was owed to Key Bank, and, therefore, it had no interest in the action. Furthermore, Key Bank was in no way needed to provide complete relief to Evelyn because Jay was the only one who owed her reimbursement pursuant to his obligation for the home equity loan in the separation agreement. Consequently, because Key Bank had no interest in the action, and complete relief can be had without it, the trial court did not err in dismissing Jay's Civ.R. 12(B)(7) motion.

{¶ 41} Accordingly, Jay's fourth assignment of error is overruled.

### Assignment of Error No. VI

{¶ 42} In his sixth assignment of error, Jay argues that the trial court erred in awarding Evelyn attorney fees. Specifically, Jay contends that the trial court should not have awarded such fees when there was no evidence presented on the issue of attorney fees.

{¶ 43} An appellate court reviews an award of attorney fees under an abuse-of-discretion standard, as such awards are generally within the sound discretion of the trial court. *Kaufman v. Kaufman,* 3d Dist. No. 2–05–24, 2006-Ohio-603, 2006 WL 319146, ¶ 30, citing *Babka v. Babka* (1992), 83 Ohio App.3d 428, 435, 615 N.E.2d 247. Abuse of discretion is more than mere error, but signifies that the trial court's decision is unreasonable, unconscionable, or arbitrary. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. The appellate court must not substitute its judgment for that of the trial court when reviewing under an abuse-of-discretion standard. Id.

{¶ 44} An award of attorney fees to the prevailing party is generally disfavored. See *Weaver v. Caldwell Tanks* (C.A.6, 2006), 190 Fed.Appx. 404, 415. The general rule is that each party is to bear his own attorney fees absent a statute providing for such an award, bad faith on behalf of a party, or a contractual obligation. *Am. Premier Underwriters v. Marathon Ashland Pipeline*, 3d Dist. No. 10–03–12, 2004-Ohio-2222, 2004 WL 937316, ¶ 23, citing *Sorin v. Bd. of Edn. of Warrensville Hts. School Dist.* (1976), 46 Ohio St.2d 177, 179, 75 O.O.2d 224, 347 N.E.2d 527; *McConnell v. Hunt Sports Ents.* (1999), 132 Ohio App.3d 657, 725 N.E.2d 1193.

{¶ 45} Pursuant to R.C. 3105.18 and Civ.R. 75(N), a trial court is permitted, with good cause shown, to award spousal support for sustenance and reasonable expenses incurred during the pendency of a divorce action and related proceedings without a hearing, including attorney fees. *Swanson v. Swanson* (1976), 48 Ohio App.2d 85, 89–90, 2 O.O.3d 65, 355 N.E.2d 894, citing *Gage v. Gage* (1956), 165 Ohio St. 462, 60 O.O. 117, 136 N.E.2d 56. When attorney fees are awarded pursuant to Civ.R. 75(N), they are awarded as part of alimony, *High v. High* (Oct. 27, 1976), 9th Dist. No. 8175, 1976 WL 188908, but when the parties have waived alimony in the separation agreement, an award of attorney fees is improper under Civ.R. 75(N). Id.

{¶ 46} In this case, the trial court granted the award of attorney fees sua sponte, without a motion from Evelyn for such fees. The magistrate did not state any grounds or good cause for the award of attorney fees, including Civ.R. 75(N) or bad faith conduct on behalf of Jay. Additionally, Jay filed an objection to the magistrate's award of attorney fees, but the trial court did not address his objection to the award. Furthermore, the magistrate granted the award without a hearing to determine the reasonableness of such a fee, the amount of Evelyn's total fee, and whether Evelyn actually paid the fee.

{¶ 47} Even if we assume that the magistrate awarded attorney fees pursuant to Civ.R. 75(N), such an award would have been improper. Any award of attorney fees under Civ.R. 75(N) would have to have been made as part of a grant of alimony, but Evelyn and Jay waived all spousal support in their separation agreement, thereby precluding a grant of alimony, and, consequently, attorney fees under this rule.

{¶ 48} Because the magistrate awarded Evelyn attorney fees without stating a basis for such an award, or without a hearing, and because an award of attorney fees pursuant to Civ.R. 75(N) would have been improper, we find that the trial court abused its discretion in adopting the magistrate's award of attorney fees.

{¶ 49} Accordingly, Jay's sixth assignment of error is sustained.

{¶ 50} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued in his first, second, third, fourth, and fifth assignments of error, but having found error prejudicial to the appellant herein, in the particulars assigned and argued in his sixth assignment of error, we affirm in part and reverse in part the judgment of the trial court.

Judgment affirmed in part
and reversed in part.

SHAW, P.J., and WILLAMOWSKI, J., concur.